Charles VOLZ and Barbara Volz,
Plaintiffs–Appellees–
Appellants,

v.

Claude P. LEDES, M.D., Defendant–
Appellant–Appellee.

Supreme Court of Tennessee,
at Jackson.

Jan. 17, 1995.

Gary K. Smith, Archie Sanders, Memphis, for defendant-appellant.

Tennessee Trial Lawyers Assoc., John A. Day, James O. Lockard, Nashville, amicus curiae, for appellant.

R. Sadler Bailey, Robert Banks, Memphis, for plaintiffs-appellants.

Tennessee Defense Lawyers Assoc., Robert V. Redding, Jackson, for amicus curiae.

## OPINION

O'BRIEN, Chief Justice.

This is an appeal from a ruling of the intermediate appellate court reversing a $3,000,000 jury award to the plaintiffs for the wrongful death of their adult son, Robert Volz, caused by medical negligence. The jury apportioned liability at 10 percent negligence to Volz himself; 45 percent to the negligence of an out-of-state, non-party physician who first treated Volz; and 45 percent negligence to defendant Claude P. Ledes, an oncologist practicing in Memphis.

The pertinent facts are as follows. In 1987, while a college student in Memphis, Robert Volz was hired by a computer data

corporation as a field representative. In 1988 he was transferred by the corporation to Houston Texas, where he began experiencing pain in the area of his groin. In March 1988, Volz visited Houston Physician, Glenn Lewis, who diagnosed Volz as suffering from testicular cancer. Dr. Lewis promptly performed surgery to remove Volz's right testicle, replacing it with an artificial prosthetic for cosmetic purposes. After surgery, Dr. Lewis conducted post-operative check-ups and in June 1988 informed Volz that CAT scans showed the surgery had been a complete success and all the cancer had been removed. Another follow-up exam was scheduled, but Volz moved back to Memphis in January 1989 and did not return to see Dr. Lewis.

In April, 1989, Volz discovered a large mass in his abdomen. He went to see a Memphis pediatrician, Dr. Durell Johnson, who referred him to local urologist, Dr. Peter Quinn. Quinn, in turn, referred Volz to the defendant Memphis oncologist, Dr. Claude Ledes.

Dr. Ledes first examined Volz on 6 April 1989. He diagnosed Volz as having advanced metastatic embryonal carcinoma of the testes, which had spread to the patient's abdomen and lungs. From April, 1989 to July, 1989, Volz received five rounds of chemotherapy from Dr. Ledes. The treatments improved Volz condition to the point that the mass in his abdomen could no longer be felt.

However, in September of 1989, Volz again discovered a mass in his abdomen, about the size of an orange. He contacted Dr. Ledes, who advised Volz that the mass was just scar tissue and that no further treatment would be necessary. The mass, nevertheless, continued to increase in size. In mid-December of that year, Volz became concerned about the growth of the mass and sought the services of another physician. An abdominal CAT scan revealed the mass to be a tumor and Volz immediately underwent surgery performed by Dr. Hubert Spears. Unfortunately, by the time the December surgery was performed, Volz condition had deteriorated and the cancer had spread dramatically, eliminating any chance that the cancerous tissue could be removed by surgery.

After the unsuccessful surgery, Dr. Ledes turned the care of Robert Volz over to his partner, Dr. Ishmael Reid. Dr. Reid treated Volz with chemotherapy until May 1990, when arrangements were made for Volz to see Dr. Patrick Loehrer, an Indiana physician specializing in the treatment of advanced stages of cancer. Dr. Loehrer advised Volz that there was only a five percent chance of achieving a long range cure and, thereafter, referred him to Dr. David Johnson in Nashville for continued care.

On 26 July 1990, Robert Volz filed a complaint in the thirtieth judicial district of Tennessee alleging medical malpractice against Dr. Claude Ledes and the Memphis Cancer Center. Volz pursued the suit until his death on 13 November 1990. Thereafter, Volz's parents continued with the lawsuit and, on 13 May 1992, filed an amended complaint alleging damages for the wrongful death of their son.

On the day of trial, the defendant filed an amended answer alleging that the negligence of non-party physician, Dr. Glenn Lewis, proximately caused or contributed to the death of Robert Volz. The amended answer sought the apportionment of damages based on the doctrine of comparative fault as adopted by this Court in the case of McIntyre v. Balentine, 833 S.W.2d 52 (Tenn.1992), which had been released shortly before the 18 May 1992 commencement of trial.

During trial, the plaintiffs' evidence showed that both the non-party Houston physician, Dr. Lewis, and the defendant, Dr. Ledes, were negligent in their treatment of Volz. The plaintiffs presented a medical expert, Dr. David Johnson, who testified that Dr. Ledes had deviated from the recognized standard of medical care in four significant ways: (1) he chose the wrong chemotherapy drugs; (2) administered them in improper dosages; (3) as well as at improper intervals, and; (4) Dr. Ledes improperly diagnosed Volz's recurrent mass as scar tissue rather than tumor.

Both the plaintiffs' and the defendant's expert medical proof at trial revealed that Volz had Stage A, or the very early signs of, testicular cancer when he first presented

himself for treatment to the non-party physician, Dr. Lewis, in Houston. It is undisputed, and the jury so found, that Dr. Lewis was indeed negligent in the treatment and follow-up care of Volz. Another of the plaintiffs' medical experts, the Indiana physician, Dr. Loehrer, testified that patients with Stage A testicular cancer have a 99 percent chance of a total cure if treated properly. Dr. Johnson also testified that the chances of total recovery from Stage A testicular cancer were between 95 and 99 percent. The defendant's medical expert testified that Volz's chances at complete recovery were at least 95 percent at the time he first saw Dr. Lewis in Houston.

When the defendant, Dr. Ledes, began treating Volz, in April of 1989, the cancer had spread to his abdomen and lungs. Dr. Johnson described Volz at this point as a "Stage 4 testicular cancer patient," the most advanced stage of cancer. Dr. Johnson further testified that Volz had a 60 percent statistical chance of complete recovery when the defendant, Dr. Ledes, began treatment.

In the briefs before this Court, the defendant does not dispute the finding of negligence, but rather argues that the negligent actions of Dr. Lewis were the proximate cause of Volz's death.

The Court of Appeals determined that the principal issue presented on appeal was whether the trial court had committed error by not directing a verdict in favor of the defendant on the issue whether the alleged negligence of Dr. Ledes proximately caused the death of Robert Volz. In its opinion, the intermediate court stated that the medical proof failed to provide a causal connection between the negligence of Dr. Ledes and the death of Robert Volz and, further, that the trial judge had erred by failing to direct a verdict for the defendant. The Court of Appeals also determined that the plaintiffs' proof, while insufficient to establish a cause for wrongful death by medical negligence, was sufficient to establish a cause of action for "loss of chance." The appeals court remanded the cause to be retried upon the merits of the defendant's alleged negligence from the perspective of damages that may

have resulted from a diminution of Robert Volz's life expectancy.[1] The court further opined that since the cause involves a suit for "loss of chance" and not for wrongful death, any damages for the reduction in the life expectancy of Robert Volz would lie with the sole negligence of the defendant and there would be "absolutely no need for the right of apportionment" of any such damages against any other tortfeasor. Therefore, the Court of Appeals held that the system of apportionment among tortfeasors, as summarized in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn. 1992), would have no application upon remand.

We disagree with the conclusion of the intermediate appellate court. In *Kilpatrick v. Bryant,* 868 S.W.2d 594 (Tenn.1993), this Court declined "to relax traditional cause in fact requirements and recognize a new cause of action for loss of chance." The Court of Appeals was in error to remand for a retrial upon a "loss of chance" cause of action. Further, upon careful review of the record, we find that the plaintiffs' wrongful death action was the proper legal vehicle under which their cause should have been initiated, tried, and decided.

T.C.A. § 29–26–115(a)(3) requires that a plaintiff in a medical malpractice action prove that "[a]s a proximate result of the defendant's negligent act or omission [of accepted community medical standards], the plaintiff suffered injuries which would not otherwise have occurred."

> This statutory language is simply another way of expressing the requirement that the injury would not have occurred but for the defendant's negligence, our traditional test for cause in fact.

*Kilpatrick v. Bryant,* 868 S.W.2d 594, 602 (Tenn.1993). Additionally, causation in medical malpractice cases must be shown as a matter of *probability,* i.e. more likely than not, or greater than a 50 percent chance, that the plaintiff's injuries would not have occurred but for the negligent actions of the defendant(s). *Id.*

---

**1.** This cause of action has also been referred to as "increased risk of harm."

■ The record reveals that the plaintiffs proffered sufficient proof at trial to establish that the negligence of Dr. Ledes more likely than not was the proximate cause of the death of Robert Volz. Expert medical testimony also established that when Volz was first treated by the defendant, he had a 60 percent chance of complete recovery. Further the plaintiffs offered uncontroverted testimony that the defendant, Dr. Ledes, failed to act in accordance with accepted community standards of medical practice for treatment of the disease from which Volz was suffering. The plaintiffs' proof established, that as a result of the defendant's deviation from such medical standards, Robert Volz suffered a death which otherwise would not have occurred. Stated another way, the record reveals that it was more likely than not Robert Volz would have survived the cancer but for the defendant's negligent actions.

The jury found that the negligence of Dr. Ledes was a contributing proximate cause of the death of Robert Volz, along with the negligence of the non-party Houston physician and the negligence of Volz himself. Under the comparative fault system adopted by Tennessee in *McIntyre*, supra, a plaintiff may recover from multiple tortfeasors as long as the plaintiff's fault is less than that of the combined tortfeasors. Upon the jury's findings and, upon the trial judge's proper charge, the correct system of apportionment was employed in accordance with the guidelines set out by this Court in *McIntyre*.

■ The plaintiffs and one of the parties who has filed an amicus brief in this matter have asked the Court to reconsider our announcement in *McIntyre v. Balentine, supra*, that one of the corollaries to the adoption of comparative fault in that decision was the abolishment of the doctrine of joint and several liability. In *McIntyre v. Balentine*, we stated (albeit in the form of dictum) as follows regarding the abolition of joint and several liability:

> "Third, today's holding renders the doctrine of joint and several liability obsolete. Our adoption of comparative fault is due largely to considerations of fairness: the contributory negligence doctrine unjustly allowed the entire loss to be borne by a negligent plaintiff, notwithstanding that the plaintiff's fault was minor in comparison to defendant's. Having thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault." 833 S.W.2d 52, at 58.

In our more recent decision in *Bervoets v. Harde Ralls Pontiac–Olds, Inc.*, 891 S.W.2d 905 (Tenn.1994), we confirmed the effect of our holding in *McIntyre v. Balentine* regarding the doctrine of joint and several liability. We stated that our holding in *McIntyre*:

> "did abolish the doctrine of joint and several liability to the extent that it allows a plaintiff to sue and obtain a full recovery against any one or more of several parties against whom liability could be established." 891 S.W.2d 905, at 907.

We again confirm that the doctrine of joint and several liability was rendered obsolete by our decision in *McIntyre v. Balentine*. We believe that a system wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault is the system that best achieves our stated goal in *McIntyre v. Balentine* of linking liability and fault. In keeping with this goal, we decline to adopt a rule comparable to the rule under the Uniform Comparative Fault Act pursuant to which the liability of a given defendant is enhanced beyond that defendant's percentage of fault if another culpable defendant is insolvent. We do not believe that the goal of linking liability with fault is furthered by a rule that allows a particular defendant's liability to be determined by the happenstance of the financial wherewithal of other defendants.

Accordingly, we reverse the judgment of the Court of Appeals and reinstate the finding of the trial jury in its entirety. Costs are taxed against the defendant.

DROWOTA, REID, ANDERSON and BIRCH, JJ., concur.