January 29, 1996

<u>FOR PUBLICATION</u>

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FILED**

**January 29, 1996**

**Cecil Crowson, Jr.**
Appellate Court Clerk

JOSEPH CARL OWENS,                    (
                                      (
    Plaintiff/Appellant,         (
                                      (
v.                                    (
                                      (
TRUCKSTOPS OF AMERICA,                (
TRUCKSTOPS OF AMERICA, INC.,          (
AND B.P. AMERICA, INC.,               (  Davidson Circuit
                                      (
    Defendants/Third-Party       (  Hon. Marietta M. Shipley,
    Plaintiffs/Appellees,        (  Judge
                                      (
                                      (  No. 01S01-9408-CV-00077
v.                                    (
                                      (
B. MICHAEL DESIGN, INC., AND          (
VITRO PRODUCTS, INC.,                 (
                                      (
    Third-Party Defendants/      (
    Appellees.                   (

<u>For Plaintiff/Appellant</u>:

Steve North
Mark North
Nashville

<u>For Defendants/Third-Party
Plaintiffs/Appellees</u>:

Barry L. Howard
Michael H. Johnson
Gracey, Ruth, Howard, Tate
   & Sowell
Nashville

<u>For Third-Party Defendants/
Appellees</u>:

Martin D. Holmes
Stewart, Estes & Donnell
Nashville

John M. Bryant, Jr.
W. Bryan Brooks

# O P I N I O N

JUDGMENT OF COURT OF APPEALS
MODIFIED AND CASE REMANDED TO
TRIAL COURT.                                                    REID, J.

This interlocutory appeal presents for determination the principles of comparative fault applicable to the assessment of liability among joint tortfeasors and the application of those principles to this transitional case, in which the cause of action accrued prior to the decision in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992). The decision of the Court of Appeals is modified and the case is remanded to the trial court.

## Pleadings

In the original complaint, the plaintiff, Joseph Carl Owens, sued Truckstops of America, Inc. and B. P. America, Inc. ("Truckstops")[1] for damages for personal injuries. The complaint alleges that the plaintiff sustained personal injuries on September 14, 1987, when a stool occupied by him in a restaurant owned and operated by Truckstops broke, causing the plaintiff to fall to the floor. The complaint, which was filed on September 14, 1988, the

---

[1]The plaintiff also names "Truckstops of America" as a defendant; however, the defendants deny that there is an entity known by that name.

last day permitted by the statute of limitations, charges that Truckstops was negligent in that it failed to maintain the stool in a safe condition and it failed to warn the plaintiff of the danger of using the stool.

Truckstops responded to the complaint with a general denial of negligence and causation and the "affirmative defense" that the proximate cause of any injury sustained by the plaintiff was the acts of unidentified third parties for which Truckstops was not liable.

On August 2, 1989, Truckstops moved the court that it be allowed to file a third-party complaint against Vitro Products, Inc. ("Vitro"), which designed and manufactured the stool, and B. Michael Design, Inc. ("Michael"), which sold the stool to Truckstops.[2] Based on allegations of negligence, strict liability in tort, and breach of implied warranty of merchantability, Truckstops asserts in the third-party complaint that it is entitled to indemnity from Vitro and Michael for any judgment that may be rendered against Truckstops and, alternatively, it is entitled to pro rata contribution by Vitro and Michael, pursuant to the Uniform Contribution Among Tort-Feasors Act.[3] The motion was allowed

---

[2]See Tenn. R. Civ. P. 14.01.

[3]Tenn. Code Ann. §§ 29-11-101 to 29-11-106 (1980).

on August 23, 1989.

This was the status of the pleadings on May 4, 1992, the date on which the decision of this Court in McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), was released.

On December 23, 1992, more than three years after Truckstops had filed its third-party complaint, Vitro filed a motion to dismiss the third-party complaint on the ground that the rights of indemnity and contribution among tortfeasors were abolished by the decision in McIntyre.[4]

On June 2, 1993, Truckstops moved that its answer be amended to assert that Vitro and Michael may have caused or contributed to the plaintiff's alleged injuries and resulting damages.

The plaintiff then, on June 4, l993, relying upon Tenn. Code Ann. § 20-1-119 (1994),[5] which was enacted by the

_____

[4]McIntyre did not discuss rights to indemnity.

[5]**Comparative fault--Joinder of third party defendants.--** (a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the

-4-

legislature on May 13, 1993, one year after the decision in _McIntyre_, filed a motion to amend his complaint to add Vitro and Michael as defendants to the original suit. The amended

---

injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against such person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging such person's fault, either:

(1) Amend the complaint to add such person as a defendant pursuant to Rule 15 of the Tennessee Rules of Civil Procedure and cause process to be issued for that person; or

(2) Institute a separate action against that person by filing a summons and complaint. If the plaintiff elects to proceed under this section by filing a separate action, the complaint so filed shall not be considered an "original complaint initiating the suit" or "an amended complaint" for purposes of this subsection.

(b) A cause of action brought within ninety (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.

(c) This section shall neither shorten nor lengthen the applicable statute of limitations for any cause of action, other than as provided in subsection (a).

(d) The provisions of subsections (a) and (b) shall not apply to any civil action commenced pursuant to § 28-1-105, except an action originally commenced in general sessions court and subsequently recommenced in circuit or chancery court.

(e) This section shall not limit the right of any defendant to allege in an answer or amended answer that a person not a party to the suit caused or contributed to the injury for which the plaintiff seeks recovery.

(f) For purposes of this section, "person" means any individual or legal entity.

complaint alleges that Vitro designed, manufactured, and sold the stool to Michael; that Vitro was negligent in the design and manufacture of the stool; and that the stool was a dangerous product. The amended complaint also alleges that Michael sold the stool to Truckstops and installed the stool in Truckstops' restaurant; that Michael was negligent in installing the stool and in failing to warn that the stool was dangerous; and that Michael breached an implied warranty of merchantability. Vitro and Michael opposed the motion to amend the complaint on the grounds that Section 20-1-119 was not applicable to this case, and therefore, the plaintiff's cause of action against them was barred by the statute of limitations, laches, and estoppel. The motion to amend the complaint was granted.

On interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Practice, the Court of Appeals found that the decision in McIntyre required that Truckstops' third-party claim against Vitro and Michael for contribution be dismissed, but the court refused to dismiss the claim for indemnity based on breach of implied warranty of merchantability. The Court of Appeals also held that any claim by the plaintiff against Vitro or Michael was barred by the statute of limitations and reversed the order making them defendants pursuant to Section 20-1-119.

## Standard of Review

The issues presented are questions of law raised by the motions to dismiss based on the failure to state a claim and statutes of limitations. Consequently, the scope of review is <u>de</u> <u>novo</u> with no presumption of correctness. <u>See</u> Tenn. R. App. P. 13(d); <u>Union Carbide Corp. v. Huddleston</u>, 854 S.W.2d 87, 91 (Tenn. 1993).

## Issues

This suit had been pending for more than three and one-half years when the decision in <u>McIntyre</u> was released. Prior to the release of <u>McIntyre</u> on May 4, 1992, the essential issues raised by the pleadings were whether Truckstops was guilty of negligence which proximately caused or contributed to the plaintiff's injuries, and whether, in the event Truckstops was found liable to the plaintiff, Truckstops was entitled to indemnity or <u>pro</u> <u>rata</u> contribution from Vitro and Michael.

The holding in <u>McIntyre</u>, that the principles of comparative fault would apply to all cases tried after the decision in <u>McIntyre</u> was released, <u>McIntyre</u>, 833 S.W.2d at 58, requires that the case before the Court be decided under

a comparative fault analysis to the extent that the principles approved in <u>McIntyre</u> and subsequent decisions can be applied in this case without imposing substantial injustice on any party. Concepts of fairness and efficiency are the basis of comparative fault. <u>See</u> W. Page Keeton et al., <u>Prosser and Keeton on the Law of Torts</u> § 67, at 468-470 (5th ed. 1984); <u>McIntyre</u>, 833 S.W.2d at 56, 58. Consequently, fairness and efficiency must be the controlling principles in adjudicating those cases commenced prior to the decision in <u>McIntyre</u> which cannot be conformed to all of the procedures contemplated by the doctrine of comparative fault. However, except where noted as a transitional procedure, the rules applied here will constitute precedents for subsequent cases.

When the alleged cause of action arose, the plaintiff had the right to assert a claim for damages against Truckstops, Vitro, and Michael, or any of them, and recover 100 percent of his damages from any of the parties found, upon any applicable legal basis, to have caused or contributed to his injuries, provided his claim was not barred by his own conduct. <u>See</u> <u>e.g.</u>, <u>Velsicol Chemical Corp. v. Rowe</u>, 543 S.W.2d 337, 342-43 (Tenn. 1976); <u>Johnson v. King</u>, 221 Tenn. 292, 426 S.W.2d 196, 198 (1968). Notwithstanding these options as to parties and causes of

action, Truckstops was the only party sued, and negligence was the only cause of action alleged in the original complaint, filed the last day allowed by the statute of limitations. The plaintiff obviously expected no recovery against any party other than Truckstops and on no theory of liability other than negligence. Nevertheless, the law in effect when the plaintiff filed suit against Truckstops would have allowed him to obtain from Truckstops full recovery for his damages upon proof that Truckstops' negligence proximately caused or contributed to his injuries, in the absence of a defense based on his own conduct. See id.

Even though, according to the law then applicable, any claim that the plaintiff had against Vitro and Michael had been lost by his failure to sue them prior to the expiration of the statute of limitations, Truckstops still had the right, pursuant to the Uniform Contribution Among Tort-Feasors Act, which right it exercised, to assert claims against Vitro and Michael for contribution and indemnity. Tenn. Code Ann. § 29-11-104 (1980).

If the plaintiff's cause of action had accrued after the decision in McIntyre and after the effective date of Tenn. Code Ann. § 20-1-119, the rights and liabilities of the parties would be significantly different. The plaintiff

would have a cause of action which would not be barred by his negligence unless his negligence was not less than the negligence of those responsible for his injuries, but his recovery would be reduced in direct proportion to the extent his negligence contributed to the injuries sustained. See McIntyre, 833 S.W.2d at 57. Also, except as discussed subsequently,[6] the defendants would not be jointly liable, but each defendant's liability would be in proportion to that party's fault. See id. at 58. Truckstops still would have the right to assert that Vitro and Michael caused or contributed to the plaintiff's injury, and the plaintiff would have the right, for 90 days under Section 20-1-119, to assert a claim against such person or persons, by amendment to the complaint or by a separate action, even if the applicable statute of limitations had run. See Rule 8.03 and Rule 14.01, Tenn. R. Civ. P.

Disposition of the motions presented on this appeal requires the resolution of issues relating to comparative negligence, statutes of limitations, third-party practice, joint tortfeasors, strict liability in tort, contribution, indemnity, and breach of implied warranty of merchantability.

---

[6]See discussion of strict liability infra pp. ____ [slip op. pp. 23-26].

McIntyre was a suit for damages for personal injuries sustained by the plaintiff in a collision between two motor vehicles.  It was essentially a two-party suit, in which the injured driver of one vehicle sued the owner, operator of the other vehicle.  The defense was contributory negligence and the determinative issue on appeal was the trial court's refusal to charge the doctrine of comparative negligence.  The Court adopted a modified form of comparative negligence:

> [S]o long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, the plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff.

McIntyre, 833 S.W.2d at 57.[7]

_____

[7]Previously, the terms "comparative negligence" and "comparative fault" have been used somewhat interchangeably to include the principles governing the apportioning of damages between a plaintiff and defendants, as well as between defendants.  See McIntyre v. Balentine, 833 S.W.2d 52, 56 (Tenn. 1992) (adopts a system of "comparative fault" in place of the common law doctrine of "contributory negligence" to determine whether a plaintiff may recover from a defendant);  Cook v. Spinnaker's of Rivergate, 846 S.W.2d 810, 811 (Tenn. 1993) (finding that the plaintiff failed to previously raise the issue of whether the doctrine of "comparative negligence" applied in determining whether the defendant was liable to the plaintiff);  Bervoets v. Harde

Ralls Pontiac-Olds, Inc., 891 S.W.2d 905, 908 (Tenn.1994) (actions for contribution between defendants will be tried under the principles of "comparative fault"). However, each of these terms may be used to express a distinct meaning.

The term "comparative negligence" is defined as the measure of the plaintiff's negligence in percentage terms used for the purpose of reducing the plaintiff's recovery from the defendant in proportion to the percentage of negligence attributed to the plaintiff. It encompasses the system of determining the damages attributable to the plaintiff as against the defendants which this Court adopted when it abandoned the "outmoded and unjust common law doctrine of contributory negligence." McIntyre v. Balentine, 833 S.W.2d at 56; see also John Scott Hickman, Note, Efficiency, Fairness, and Common Sense: The Case for One Action as to Percentage of Fault in Comparative Negligence Jurisdictions that have Abolished or Modified Joint and Several Liability, 48 Vand. L. Rev. 739, 741 n. 9 (1995) (quoting Schneider Nat'l, Inc. v. Holland Hitch Co., 843 P.2d 561, 566 n. 4 (Wyo. 1992)). The term "comparative fault" is defined as those principles which encompass the determination of how to "apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence." Schneider Nat'l, Inc. v. Holland Hitch Co., 843 P.2d at 566 n. 4.

The rationale behind this distinction is that negligence is generally the only theory by which the plaintiff's damages can be reduced; whereas, the defendants' liability may be based on theories of liability other than negligence.

It is recognized that there are problems with the use of these terms and that scholars have suggested alternative approaches:

> The Court [in McIntyre v. Balentine] uses the term "comparative fault," which is adequate for negligence actions but inappropriate for strict liability actions, in which the conceptually confused term "comparative causation" sometimes is substituted. The best term, for both negligence and strict liability actions, is "comparative responsibility."

Richard W. Wright, The Logic and Fairness of Joint and

In no case involving principles of comparative fault decided by the Court since <u>McIntyre</u>, even though they all have been transitional cases, has the Court found that substituting comparative negligence for the traditional doctrine of contributory negligence worked an unfairness upon any party.[8]  Likewise, application of comparative negligence in this case would not defeat the right alleged, the right to

<u>Several Liability</u>, 23 Mem. St. U. L. Rev. 45 n. 2 (1992);

> The term "comparative fault" will be used in instances because it more appropriately reflects what the courts are doing when they come to address the interface between plaintiffs' fault and so-called strict liability.

Victor E. Schwartz, <u>Comparative Negligence</u>, § 11-1 (3d ed. 1994).

Nonetheless, the usefulness of the terms in discussing the issues justifies their adoption despite their limitations.  For the purposes of this opinion, the term "comparative negligence" will refer to the system of apportioning negligence between a plaintiff and the defendants, and the term "comparative fault" will refer not only to the system of apportioning liability between tortfeasors, but also to the set of principles governing the analysis of liability in actions grounded in tort.

[8]<u>See</u> <u>e.g.</u>, <u>Whitehead v. Toyota Motor Corp.</u>, 897 S.W.2d 684 (Tenn. 1995) (comparative negligence principles applied in apportioning damages between a plaintiff and defendants in strict liability actions); <u>Volz v. Ledes</u>, 895 S.W.2d 677, 680 (Tenn. 1995) (damages apportioned among defendants according to fault even if one of the defendants is insolvent); <u>Eaton v. McLain</u>, 891 S.W.2d  587 (Tenn. 1994) (prior common law doctrines of remote contributory negligence, last clear chance and implied assumption of risk have become subsumed by comparative negligence); <u>Perez v. McConkey</u>, 872 S.W.2d 897 (Tenn. 1994) (implied assumption of risk is no longer an absolute bar to recovery).

recover damages from Truckstops upon proof that Truckstops was negligent and its negligence proximately caused or contributed to the plaintiff's injuries and damages.[9]

However, application of comparative fault principles in this case would limit the plaintiff's recovery to that portion of the damages corresponding to the fault attributable to Truckstops without granting to the plaintiff the benefit of other rights recognized in McIntyre, and, therefore, could impose upon him a significant unfairness. The application of McIntyre, which allows the defendant to show "that a non-party caused or contributed to the injury or damage from which recovery is sought," id. at 58, would allow Truckstops to show that Vitro and Michael were responsible for some of the plaintiff's damages thereby reducing the extent of its liability and thus preventing the plaintiff from obtaining a full recovery, unless the plaintiff has the right, pursuant to Tenn. Code Ann. § 20-1-119 or otherwise, to assert claims against Vitro and Michael.

Consequently, before deciding Truckstops' liability to the plaintiff and Truckstops' claims under its third-party action against Vitro and Michael, the plaintiff's

---

[9]Truckstops did not plead contributory negligence in this case.

rights against those third-party defendants must be determined.

## Statutes of Limitations

Vitro and Michael claim that the plaintiff is barred by the statutes of limitations from recovering from them. The plaintiff's causes of action for strict liability and negligence accrued when he was injured on September 14, 1987. The record does not show clearly when his alleged warranty claim accrued, it certainly accrued no later than the date of the injury. See Tenn. Code Ann. § 47-2-725(2) (1992). Under Tenn. Code Ann. § 28-3-104 (Supp. 1993), actions for personal injury, including products liability cases, must be commenced within one year from the date on which the cause of action accrued. Actions for breach of the implied warranty of merchantability must be commenced within four years under Section 47-2-725. The plaintiff did not seek to assert any claim against Vitro or Michael until June 4, 1993, almost six years after the date of his injury. Consequently, any claims the plaintiff may have had against Vitro or Michael were barred when he moved the Court to amend his complaint to make them defendants.

The enactment of Tenn. Code Ann. § 20-1-119 does

not revive the plaintiff's right to assert claims against Vitro and Michael. Section 20-1-119 now allows a plaintiff a limited time within which to amend a complaint to add as a defendant any person alleged by another defendant to have caused or contributed to the injury, even if the statute of limitations applicable to a plaintiff's cause of action against the added defendant has expired. However, this statute was not enacted until 1993, after the plaintiff's claims had become barred. The state constitution prohibits the revival of these causes of action outside of the limitation periods. The Constitution of Tennessee, Article I, Section 20, provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made." Retrospective laws are laws that "take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed." Morris v. Gross, 572 S.W.2d 902, 907 (Tenn. 1978). This Court has determined that a potential defendant acquires a vested right not to be sued once a cause of action has accrued and the applicable statute of limitations has expired. Watts v. Putnam County, 525 S.W.2d 488, 492 (Tenn. 1975). Accordingly, the plaintiff is barred from asserting any claim for personal injury or breach of implied warranty of merchantability against Vitro or Michael.

Since the plaintiff cannot recover from Vitro or Michael damages which may be attributable to them, he may be denied a full recovery unless he is allowed to recover all of his damages from Truckstops. However, this could constitute an injustice to Truckstops, unless Truckstops can assert third-party claims against Vitro and Michael. The issue then is the effect of McIntyre and subsequent decisions on Truckstops' right to pursue third-party actions against Vitro and Michael for indemnity and contribution.

**Third-Party Practice**

The only cause of action asserted by the plaintiff against Truckstops was based on negligence, while Truckstops has asserted third-party claims based on negligence, strict liability in tort, and breach of implied warranty of merchantability. The basis on which Truckstops can assert third-party claims against Vitro and Michael is not limited to the cause of action asserted by the plaintiff against Truckstops. In Turner v. Aldor Co. of Nashville, Inc., 827 S.W.2d 318 (Tenn. App. 1991), decided before McIntyre, the Court of Appeals examined third-party practice in Tennessee under Rule 14 of the Tennessee Rules of Civil Procedure,[10]

_____

[10]    At any time after commencement of the
        action a defending party, as a third-
        party plaintiff, may cause a summons and

and found that its purpose "is to enable the defendant to implead another person 'who is or may be liable to him for all or part of the plaintiff's claim against him.'" Id. at 320 (quoting Tenn. R. Civ. P. 14.01). The court held:

> The third-party defendant's liability to the defendant may be based on an entirely different theory than the defendant's liability to the plaintiff. Since a plaintiff may choose to sue one or more defendants without joining others, it is irrelevant that the plaintiff has no claim against the third-party defendant or has chosen not to assert one.

Id. (citations omitted). See also 4 American Law of Products Liability 3d, § 52:17 (Timothy E. Travers et al. eds., 3d ed. 1987). Notwithstanding the above-stated rule applicable to third party practice generally, the doctrine of comparative fault contemplates that the apportionment of fault is limited to those against which the plaintiff has a cause of action. Since the claims that Truckstops, in the posture of a third-party plaintiff, has against Vitro and Michael, in the posture of third-party defendants, are claims which the plaintiff Owens could have asserted against Vitro and

---

> complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. . . .

Tenn. R. Civ. P. 14.01.

Michael, an apportionment of liability among the first-party defendant and the third-party defendants that is consistent with principles of comparative fault can be accomplished according to third-party proceedings in this case.

## Liability Between Joint Tortfeasors

### I. Negligence

Truckstops insists that McIntyre "abolished" joint and several liability in all cases "tried or retried, after the McIntyre decision," and that, consequently, its liability is limited to that portion of the fault attributable to it. Truckstops also claims that it has the right, under McIntyre, to show, pursuant to its amended answer, that Vitro and Michael caused or contributed to the plaintiff's injuries and resulting damages, thereby reducing or eliminating liability on its part. Vitro and Michael also contend that McIntyre abolished joint and several liability and the incidental rights of contribution and indemnity.

McIntyre was an action in negligence against a sole defendant; consequently, the only allocation of fault in that case was between the plaintiff and the defendant. After remanding the case for a new trial, the Court in McIntyre

stated:

> We recognize that today's decision affects numerous legal principles surrounding tort litigation. For the most part, harmonizing these principles with comparative fault must await another day. However, we feel compelled to provide some guidance to the trial courts charged with implementing this new system.

McIntyre, 833 S.W.2d at 57. As part of its guidance for the bench and bar, the Court described that decision's effect as rendering the doctrine of joint and several liability "obsolete,"[11] stating,

> [h]aving thus adopted a rule more closely linking liability and fault, it would be inconsistent to simultaneously retain a rule, joint and several liability, which may fortuitously impose a degree of liability that is out of all proportion to fault.

Id. at 58. The Court further stated:

> [T]he Uniform Contribution Among Tort-Feasors Act, T.C.A. §§ 29-11-101 to 106 (1980)), will no longer determine the apportionment of liability between

_____

[11]The Court also used the term "obsolete" to indicate that the doctrines of remote contributory negligence and last clear chance were subsumed into the doctrine of comparative negligence. McIntyre, 833 S.W.2d at 57.

-20-

codefendants.

Id. However, in response to a petition for a rehearing, the Court stated that further guidance regarding "the advisability of retaining joint and several liability in certain limited circumstances . . . should await an appropriate controversy." Id. at 60. That issue is presented in the case before the Court.

The comparative fault decisions rendered to date by this Court have dealt primarily with the allocation of fault between the plaintiff and the defendant or defendants. In Perez v. McConkey, 872 S.W.2d 897 (Tenn. 1994), there was only one defendant. The cause of action was common law negligence. The issue was whether assumption of risk was an absolute bar to the plaintiff's charge of negligence. The defendants in Eaton v. McLain, 891 S.W.2d 587 (Tenn. 1994), were husband and wife. The complaint charged common law negligence, the issue was the factors to be considered in assigning fault to the plaintiff and the defendants. There was no determination of competing rights and liabilities between the defendants.

The first opportunity to consider the competing interests between tortfeasors was presented in Bervoets v.

Harde Rolls Pontiac-Olds, Inc., 891 S.W.2d 905 (Tenn. 1994).
In that case the tortfeasors were charged with separate,
independent acts of negligence. Like the case before the
Court, that case was pending when the decision in McIntyre
was rendered. Bervoets, who was a passenger in an automobile
operated by Jackson, was injured when the vehicle was
wrecked. Bervoets sued Jackson and the owners of the
vehicle, who, in turn, filed a third-party claim for
contribution against Adanac, Inc., alleging that the third-
party defendant caused the accident by unlawfully serving
alcoholic drinks to Jackson, who was a minor. Jackson and
his liability insurance carrier entered into a settlement
agreement with Bervoets, in which Bervoets released his
claims against all parties. Jackson's insurer then pursued a
claim against Adanac for contribution.

Following the release of the decision in McIntyre,
Adanac moved to dismiss Jackson's claim for contribution on
the ground that McIntyre abolished joint and several
liability and the incidental right to contribution. The
Court rejected Adanac's interpretation of the opinion in
McIntyre, stating:

> [O]ur statements in McIntyre with regard
> to the effect of our adoption of a
> scheme of comparative fault on the
> remedy of contribution make it clear

> that we did not intend to deprive
> litigants of the right to pursue a claim
> for contribution in an appropriate case:

Id. at 907. Since there is no right of contribution among tortfeasors who are not jointly liable, the Court recognized that the right to contribution would be utilized in some situations to resolve the rights and liabilities of tortfeasors jointly and severally liable to others. In explanation of why there was no right to contribution in Bervoets, the Court quoted from McIntyre:

> [B]ecause a particular defendant will henceforth be liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence, situations where a defendant has paid more than his "share" of a judgment will no longer arise, and therefore the Uniform Contribution Among Tortfeasors Act, T.C.A. §§ 29-11-101--106 (1980) will no longer determine the apportionment of liability between codefendants.

Id. (emphasis in original) (quoting McIntyre, 833 S.W.2d at 58). The Court in Bervoets made clear that Tenn. Code Ann. § 29-11-103(1), which provides that tortfeasors' "relative degrees of fault shall not be considered" in determining the pro rata shares of liability, is not consistent with the doctrine of comparative fault, which imposes liability in direct relation to fault. The holding in Bervoets was that

under comparative fault, Jackson and Adanac, Inc. were not jointly and severally liable to the plaintiff, but, Jackson, who had paid the plaintiffs' damages in full, would be allowed, in that transitional case, to assert a claim for contribution against Adanac, Inc. so that liability would be assessed, as explained on petition to rehear, according to "the percentage of fault attributable to each of the defendants."

Had the plaintiff's cause of action in Bervoets arisen subsequent to the adoption of comparative fault, Jackson, in an effort to reduce the extent of his liability, would have alleged in his answer that Adanac, Inc. caused or contributed to the damages, and the plaintiff, on pain of recovering less than full damages, would have amended his complaint pursuant to Section 20-1-119 to assert a claim against Adanac, Inc. Thus, the purpose of comparative fault, the assessment of liability in proportion to fault, would have been accomplished without the proceeding to enforce contribution, which was made necessary in Bervoets because the time within which the plaintiff could assert a claim against Adanac, Inc. directly had expired when McIntyre was decided.

Procedurally, Bervoets and the case before the

Court are similar. In both cases, the plaintiff sued a defendant on a charge of negligence, and the defendant filed a third-party action against others asserting a separate, independent act of negligence. In neither case had the plaintiff asserted a claim directly against the third-party defendant. The main difference in the two cases is that in Bervoets, the plaintiff had, by settlement with the defendants, recovered his damages in full, while, in the present case, the issue of the defendant's liability to the plaintiff had not been resolved when McIntyre was decided. The defendants in Bervoets were charged with separate, independent acts of negligence, and under comparative fault would not be jointly liable. Contribution was utilized so that liability for damages could be apportioned between the defendants on the basis of their relative fault.

Volz v. Ledes, 895 S.W.2d 677 (Tenn. 1995), was a medical malpractice case in which the jury attributed 10 percent of the fault to the plaintiff, 45 percent to the physician-defendant, and 45 percent to a non-party physician. As in Bervoets, each tortfeasor was charged with separate, independent acts of negligence. The decision was that fault be attributed against each tortfeasor separately, even though one tortfeasor was not a party to the suit.

-25-

These comparative fault cases decided by the Court establish that, in all cases of negligence in which the plaintiff is entitled to recover damages, liability for damages will be reduced in proportion to the damages attributable to the plaintiff's fault. The decisions also establish that where the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributable to its fault. As to those tortfeasors, liability is not joint and several but several only, even though two or more tortfeasors are joined in the same action.

However, as in Bervoets, fairness demands that contribution be allowed in this case. Truckstops' third-party claim against Vitro and Michael for contribution based on allegations of negligence will be apportioned according to the percentage of fault attributable to each of the tortfeasors. The policy consideration that Tennessee not "abandon totally our fault-based tort system" which was the basis for rejecting pure comparative fault in favor of the "49 percent" rule, McIntyre, 833 S.W.2d at 57, is not applicable to the apportionment of liability among

tortfeasors.[12]  This is consistent with the decision in

Bervoets that "[the jury] shall proceed to determine the

percentage of fault attributable to each of the defendants,

and contribution will be ordered accordingly."  Bervoets, 891

S.W.2d at 908.  Allowing the claim for contribution will

accomplish the same equitable results in this case that would

be accomplished if the rights and liabilities of all of the

parties could be determined according to the principles

announced in McIntyre and provided in Section 20-1-119.


II.  **Strict Liability in Tort**


Whitehead v. Toyota Motor Corp., 897 S.W.2d 684

(Tenn. 1995), was the Court's first comparative fault case

involving a products liability action based on strict

liability in tort.  The Court held that in Tennessee, as in

the majority of other jurisdictions, comparative negligence

applies to products liability actions based on strict

liability in tort.  Id. at 691.  Whitehead was a federal case

in which the United States District Court, pursuant to Rule

---

[12]Under a "pure comparative fault" analysis, the co-defendant may recover even if his negligence is greater than the negligence of the other tortfeasors.  Liability is apportioned solely based on the percentage of causal negligence, or fault, Cf. McIntyre, 833 S.W.2d at 57; 1 J. D. Lee & Barry A. Lindahl, Modern Tort Law, § 12.06 (rev'd ed. 1994); Comparative Negligence/Fault, 1 Prod. Liab. Rep. (CCH) ¶ 3030 (Apr. 1994).

23, Rules of the Supreme Court, certified to this Court the question of whether the affirmative defense of comparative negligence can be raised in a products liability action based on strict liability in tort.  The Court recognized that prior to the adoption of comparative fault in Tennessee contributory negligence was not a defense to an action based on strict liability in tort, Whitehead v. Toyota Motor Corp., 897 S.W.2d at 688, see Ellithorpe v. Ford Motor Co., 503 S.W.2d 516 (Tenn. 1973).  However, answering the certified question in the affirmative, the Court stated:

> The conduct that leads to strict products liability involves fault, as the word "fault" is commonly understood. See generally William C. Powers, The Persistence of Fault in Products Liability, 61 Tex. L. Rev. 777 (1983). In keeping with the principle of linking liability with fault, a plaintiff's ability to recover in a strict products liability case should not be unaffected by the extent to which his injuries result from his own fault.

Whitehead v. Toyota Motor Corp., 897 S.W.2d at 693.

After reviewing the history of strict liability in Tennessee, the Court found that reducing the plaintiff's recovery by the proportion of damages attributable to the plaintiff's fault would not defeat the principal reasons for the adoption of strict liability:

> (1) to encourage greater care in the
> manufacture of products that are
> distributed to the public, and (2) to
> relieve injured consumers from the
> burden of proving negligence on a
> manufacturer's part.

Id. at 693.

Although there were two defendants in Whitehead, the manufacturer and the seller of the product alleged to be defective and unreasonably dangerous, the issue presented to the Court related only to the apportionment of damages between the plaintiff and the defendants. Whitehead did not address the issue presently before the Court, the rights and liabilities between multiple defendants in a strict liability action. This case is the "appropriate controversy," McIntyre, 833 S.W.2d at 60, for the Court to address "the advisability of retaining joint and several liability," id., for defendants in the chain of distribution of a product who are liable upon a theory of strict liability in tort.[13]

---

[13]The Court has not, as stated in the dissent, disapproved of the doctrine of joint and several liability in a general sense; see infra p. _____ [slip op. dissent at p. 2]; it has disapproved joint and several liability in a particular sense, that is, where the defendants were charged with separate, independent acts of negligence. This particular limitation on joint and several liability was the basis for the Court's decisions in Bervoets v. Harde Ralls Pontiac-Olds, Inc. 891 S.W.2d at 905; Whitehead v. Toyota Motor Corp., 897 S.W.2d at 684; and Volz v. Ledes, 895 S.W.2d at 677. Joint and several liability need not be "resurrected," see infra p. _____ (dissent), [slip op.

Strict liability in tort is recognized as a cause of action in the Tennessee Products Liability Act of 1978. Tenn. Code Ann. §§ 29-28-101 to 29-29-108 (1980 and Supp. 1994). Under Tenn. Code Ann. § 29-28-105(a) (1980), a manufacturer or seller of a product may be liable for "injury to person or property caused by the product [if] the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Proof of negligence on the part of the manufacturer or seller is not required. Ford Motor Co. v. Eads, 224 Tenn. 473, 457 S.W.2d 28, 30 (1970); Restatement (Second) of Torts, § 402A, cmt. m (1965). The policy reasons for imposing strict liability were reviewed by the Court in Whitehead:

> "We imposed strict liability against the manufacturer and in favor of the user or consumer in order to relieve injured consumers 'from *problems of proof* inherent in pursuing negligence . . . and warranty . . . remedies . . .' As we have noted, we sought to place the burden of loss on manufacturers rather than 'injured persons *who are powerless to protect themselves.*'"

Whitehead v. Toyota Motor Corp., 897 S.W.2d at 691 (quoting from Daly v. General Motors Corp., 575 P.2d 1162, 1167-69

dissent at p. 5], because it has continued to be an integral part of the law, except where specifically abrogated.

(1978)) (emphasis in original).  The Court recognized that in applying comparative negligence principles to actions based on strict liability,

> [t]here is still no requirement that negligence on the part of a manufacturer be proved, only that the manufacturer distributed a defective or unreasonably dangerous product.

Id. at 693.

Procedurally, a plaintiff in a strict liability action must satisfy one of the conditions set forth in § 29-28-106(b) (Supp. 1994), which provides:

> No product liability action as defined in § 29-28-102(6), when based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless the seller is also the manufacturer of the product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

A primary purpose of this section is "to ensure that an

injured consumer may maintain a strict liability action against whomever is most likely to compensate him for his injuries."  Seal v. Sears, Roebuck and Co., Inc., 688 F. Supp. 1252, 1253 (E.D. Tenn. 1988).  When the manufacturer is not amenable to service of process or is insolvent, an injured consumer can assert liability against the "faultless" seller.  If, under these circumstances, the seller were not held to be jointly liable for the plaintiff's damages, then, contrary to the products liability statute, the injured consumer would be left with no remedy.  When the legislature grants a remedy, it cannot be abolished by judicial decision.  Bervoets, 891 S.W.2d at 907.

Consequently, joint and several liability against parties in the chain of distribution of a product is essential to the theory of strict products liability.  Since strict liability does not require proof of negligence, but only that the product was defective or unreasonably dangerous, parties in the chain of distribution must be treated as a single unit for the purpose of determining and allocating fault.[14]

---

[14]The dissent's insistence that each defendant in an action for strict liability be liable to the plaintiff according to its separate "fault" would impose upon the plaintiff the burden of proving each defendant was negligent, thus abolishing strict liability.

This conclusion is supported by portions of the Uniform Contribution Among Tort-Feasors Act not addressed in McIntyre, which provide, "[i]f equity requires, the collective liability of some as a group shall constitute a single share" and "[p]rinciples of equity applicable to contribution generally shall apply."  Tenn. Code Ann. § 29-11-103(2) and (3). Consequently, in the case before the Court, on the charge of strict liability in tort, the liability of Vitro, as the manufacturer, and Michael, as the seller[15] of a product alleged to be defective and dangerous, "shall constitute a single share."  The third-party defendants will be held jointly and severally liable as to the third-party plaintiff, with principles of contribution and indemnity applying to determine the ultimate division of liability among the strictly liable defendants.[16]

This holding is consistent with Whitehead.  In that case, as in almost all of the cases cited therein where comparative fault was applied to strict products liability actions, Whitehead, 897 S.W.2d at 691-92, the allocation of

---

[15]The strict liability action against Michael cannot be maintained unless one of the conditions of Tenn. Code Ann. § 29-28-106(b) (Supp. 1994) is satisfied.

[16]Whereas contribution has been utilized in transitional cases as a means of attributing liability according to fault, contribution and indemnity will continue to be the effective means of apportioning liability among tortfeasors jointly and severally liable in cases arising under comparative fault.

fault among the defendants in the chain of distribution of the product was not an issue. It was not an issue because in those comparative fault jurisdictions, joint and several liability of tortfeasors had been retained after the adoption of comparative fault or the strict products liability action was brought against only one defendant. See Elliot v. Sears, Roebuck and Co., 642 A.2d 709 (Conn. 1974); West v. Caterpillar Tractor Co., 336 So. 2d 80 (Fla. 1976); Kaneko v. Hilo Coast Processing, 654 P.2d 343 (Haw. 1982); Coney v. J.L.G. Indus., Inc., 454 N.E.2d 197 (Ill. 1983); Bell v. Jet Wheel Blast, 462 So. 2d 166 (La. 1985); Austin v. Raybestos-Manhattan, Inc., 471 A.2d 280 (Me. 1984); Brisboy v. Fibreboard Corp., 418 N.W.2d 650 (Mich. 1988); Jack Frost, Inc. v. Engineered Bldg. Components Co., 304 N.W.2d 346 (Minn. 1981); Day v. General Motors Corp., 345 N.W.2d 349 (N.D. 1984); Sandford v. Chevrolet Div. of General Motors, 642 P.2d 624 (Or. 1982); Fiske v. MacGregor, 464 A.2d 719 (R.I. 1983); Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex. 1984); Mulherin v. Ingersoll-Rand Co., 628 P.2d 1301 (Utah 1981); Lundberg v. All-Pure Chemical Co., 777 P.2d 15 (Wash. App. 1989); Star Furniture Co. v. Pulaski Furniture Co., 297 S.E.2d 854 (W. Va. 1982); Dippel v. Sciano, 155 N.W.2d 55 (Wis. 1967); Keltner v. Ford Motor Co., 748 F.2d 1265 (8th Cir. 1984) (based on Arkansas law); Trust Corp. of Montana v. Piper Aircraft Corp., 506 F. Supp. 1093 (D. Mont.

1981) (based on Montana law).

When comparative fault principles are applied in a strict liability action, the plaintiff's fault is compared with the fault of the strictly liable defendants as a single unit. The fault of these defendants is measured by the injury caused by the defective or unreasonably dangerous product. When liability is found on strict liability and also negligence or other theories, the trier of fact must apportion the fault for the plaintiff's injuries or damages according to the percentage of damages caused by the plaintiff, that caused by the product, and that caused by each tortfeasor acting separately and independently.[17] This procedure was adopted by the Court in <u>Whitehead</u>, where the

---

[17]The following special verdict form, as adopted to the specific allegations of the case, may be used in cases where liability is predicated upon strict products liability and other theories such as negligence:

Using 100 percent as the total combined harm, find from a preponderance of the evidence the percentage of the plaintiff's injuries or damages proximately caused by:

The defective or unreasonably dangerous product (Defendants A and B) _____ %
Defendant X _____ %
Defendant Y _____ %
Plaintiff _____ %

(Total must equal 100%)

_____
Signature of Foreman

Court stated:

> The triers of fact will determine the percentage of a plaintiff's damages that is attributable to the <u>defective or unreasonably dangerous product</u> as well as the percentage that is attributable to the plaintiff's own fault.

<u>Whitehead v. Toyota Motor Corp.</u>, 897 S.W.2d at 693 (emphasis added).  <u>See</u> <u>also</u> <u>Duncan</u>, 665 S.W.2d at 427 (Tex. 1984).

Thus, the adoption of comparative fault did not alter that products liability law under which the liability of defendants in the chain of distribution of a product, who are liable under a theory of strict liability, is joint and several.  Under comparative fault principles, however, these defendants are jointly and severally liable only for that percentage of the plaintiff's damages caused by the product.  For the percentage of damages caused by the product, the strictly liable defendants are treated as a single unit or share.  On the other hand, when liability is based on negligence, each of the defendants is severally liable only for the percentage of damages caused by its negligence.  If those defendants who can be held jointly and severally liable on a claim of strict liability are also charged with negligence, as in this case, their liability on the negligence charge will be as separate, independent

tortfeasors, and their liability on the negligence charge will be several only.

The result of applying these principles to this case is that on the charge of strict liability in tort, the liability of Vitro and Michael to Truckstops is joint and several, but only to that portion of the total liability that is attributable to them as a single unit or share, under comparative fault principles. On the charge of negligence, the liability of each is several and in proportion to the damage attributable to its negligence.

### III. **Indemnity**

Truckstops claims that it is entitled to indemnity from either Vitro or Michael because its negligence should be considered passive. It relies upon the rule in Tennessee that one guilty of only "passive" negligence rather than "active" negligence can recover indemnification. Wolff & Munier, Inc. v. Price-Waterhouse, 811 S.W.2d 532, 536 (Tenn. App. 1991). Whereas contribution shifts only part of the loss from one party to another, traditional implied indemnity shifts the entire loss from the party found liable to a party who should bear the entire loss. 4 American Law of Products Liability at § 52.1. The law of indemnity may be applied

where one party is held liable solely by imputation of law because of a relation to a wrongdoer.  W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 51, at 341-42 (5th ed. 1984).  "Contracts of indemnification may be expressed, or an obligation to indemnify may arise by implication from the relationship of the parties . . . ."  Houseboating Corp. of Am. v. Marshall, 553 S.W.2d 588, 589 (Tenn. 1977).

The right of indemnity is not impaired by the Uniform Contribution Among Tort-Feasors Act.  Section 29-11-102(f) provides:

> This chapter does not impair any right of indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

See also Continental Ins. Co. v. City of Knoxville, 488 S.W.2d 50, 52 (Tenn. 1972).  However, indemnification which imposes the entire loss on one tortfeasor based on the imprecise distinction between active and passive negligence is inconsistent with the comparative fault principles adopted in McIntyre and subsequent decisions.  Consequently, there can be no claim for indemnification based on active-passive

negligence because that distinction is subsumed into the doctrine of comparative fault. While no longer determinative of the right to seek indemnity, the distinctions between the active and passive negligence may be factors to be weighed by the jury in assessing the percentage of fault of the parties. Schneider Nat'l Inc. v. Holland, 843 P.2d 561, 578-79 (Wyo. 1992). However, where implied indemnity is based on the legal relationship between the parties, the traditional principles of indemnity continue to apply.

Consequently, Truckstops is not entitled to indemnity on the third-party plaintiff's charge of negligence, and the liabilities of Truckstops, Vitro and Michael on the charge of negligence will be based on their respective percentages of fault. Neither Vitro nor Michael has raised the issue of indemnity on the charge of strict liability.

## IV. **Breach of Implied Warranty**

As noted by the Court of Appeals, the third-party complaint alleges no facts in support of the charge of breach of implied warranty of merchantability. Consequently, the discussion of that issue is limited to the determination that in an action for damages for personal injuries based on

breach of implied warranty of merchantability of a product,

comparative negligence may be pled as a defense.  The

rationale is the same as that supporting comparative

negligence as a defense in actions based on negligence and

strict liability in tort.  The principle is well-stated by

the Court in Fiske v. MacGregor, Div. of Brunswick, 464 A.2d

719, 728 (R.I. 1983):

> If the comparative-negligence statute
> only applied to negligence actions, a
> defendant manufacturer found liable in
> strict liability or implied warranty
> could not have the damages apportioned
> because of plaintiff's culpable conduct.
> Ironically, defendant manufacturers
> found liable in negligence would have
> the damages apportioned, despite the
> fact that their conduct was clearly more
> culpable than the conduct of those
> defendants found liable in strict
> liability or implied warranty.  We
> believe that the just outcome of a case
> should not be determined by adroit
> pleading or semantical distinctions.  A
> defendant's culpability is the basis for
> an award of damages, whether that
> culpability is denominated negligence,
> strict liability, or breach of warranty.
> Similarly, a plaintiff's culpable
> conduct is the basis for an
> apportionment of those damages.

The conclusion is that, on the charge of breach of

implied warranty of merchantability, a plaintiff's claim for

damages and the apportionment of those damages among

tortfeasors in a comparative fault case, and among the first-

party and third-party defendants in this case, will be determined according to the principles of comparative fault hereinabove discussed.

## Conclusion

Based on these considerations, the equitable results contemplated by the doctrine of comparative fault can be best accomplished in this case by not relieving Truckstops of the joint and several liability which existed when the plaintiff's cause of action against Truckstops accrued, and by allowing Truckstops to pursue its third-party claims against Vitro and Michael. The plaintiff will have the same expectation of recovery as when he filed his action for negligence against Truckstops, and Truckstops will have the same right to pursue its third-party claims against Vitro and Michael as when it made them third-party defendants. In the event that Truckstops is found to have caused or contributed by its negligence to the plaintiff's injuries and damages, the plaintiff shall be allowed to recover from Truckstops the full amount of his damages. And Truckstops shall be allowed to pursue its third-party actions according to the principles set forth in this decision. Thus, liability for the damages to which the plaintiff may be entitled will be allocated among all of the defendants in a manner consistent with the

doctrine of comparative fault.[18]

The judgment of the Court of Appeals remanding the case to the trial court is affirmed as modified by this decision.

Costs will be taxed against the parties equally.

_____
REID, J.

Concur:

Anderson, C.J., Birch, and
    White, JJ.

Drowota, J. - Dissenting.

---

[18]Although the allocation of liability in this case will be consistent with the doctrine of comparative fault, the discharge of the separate liabilities and the attending consequences may depend upon the collectibility of the awards made.