IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 1999 Session

# BILLY and MARY MILLIKEN v. CRYE-LEIKE REALTORS, ET AL.

**Direct Appeal from the Circuit Court for Smith County**
**No. 4119     Clara Byrd, Judge**

---

**No. M1999-00071-COA-R3-CV - Filed July 5, 2001**

---

The buyers of a new residence filed this action against the builder and their realtor after discovering that the house was defective. The claims against the realtor alleged negligent misrepresentation and violations of the Tennessee Consumer Protection Act based in part on the agent's representation that the builder was licensed. The jury, using a jury verdict form, found that the realtor had committed a deceptive act or practice prohibited by the Consumer Protection Act, but determined that the buyers had suffered no loss therefrom. The jury also found the realtor liable for negligent misrepresentation, calculated the damages resulting from the realtor's negligent misrepresentation, and apportioned fault at 10% to the buyers, 10% to the realtor, and 80% to the builder, a nonparty. On appeal, the buyers argue that the verdict was inconsistent and challenge the assessment of costs and the failure to award attorney fees. We affirm the verdict, the denial of attorney's fees, and the apportionment of court costs. We vacate the denial of discretionary costs and remand for determination of that issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part, and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

W. Gary Blackburn and Cathy C. Speers, Nashville, Tennessee for the appellants, Billy and Mary Milliken.

J. Russell Farrar and Kristin Ellis Berexa, Nashville, Tennessee for the appellees, Crye-Leike Realtors and Brenda White.

## OPINION

This appeal arises from the purchase of a new residence. The house was built by Terry Mason, d/b/a M & M Construction, and sold to Billy and Mary Milliken. Brenda White, a real estate agent employed by Crye-Leike Realtors, showed the Millikens the house and was the listing agent for the sale. During their initial discussion, Mrs. Milliken asked Ms. White whether the builder was

a reputable, licensed contractor. Ms. White answered affirmatively.[1] According to Mrs. Milliken, Ms. White also stated that she had seen the builder's work and had used him before. Ms. White related that of the other homes he had built, she had heard no complaints.[2] The Millikens toured the house only once before making an offer on it.

When the Millikens signed the contract to purchase the house for $129,900 in November 1996, it was still incomplete. Ms. White made various entries on the form contract reflecting the fact that the house was newly constructed. In a space following language that stated, "Seller will make the following specific repairs," Ms. White wrote "None-New House." In the space following language stating, "Repair Limitation: Seller agrees to make repairs which may be required by Lender and/or under Paragraphs 8 and/or 9 hereof or to pay for such repairs up to but not to exceed an aggregate total cost of _____," Ms. White wrote "None-New House." Ms. White also wrote in the "Special Provisions" section, "One-year warranty provided by builder per requirement of the Tennessee Contractor Licensing Board."

The original closing date was extended because the house was unfinished. At some point in February, after signing the contract, but before closing, the Millikens moved into the house. They noticed a number of problems and had discussions with Ms. White about the problems. Ms. White had Mr. Mason go to the house to discuss the issues with the Millikens.

Closing occurred on March 5, and at that time the Millikens submitted a "punch list" of unfinished items or problems which needed to be completed or repair. Ms. White had told the Millikens to make this list and bring it to the closing, and that they would make it part of the contract. This punch list, dated March 5, 1997, was attached to the contract at closing. The list included numerous items including waterproofing the deck, installing the water line to the ice maker, repairing a crack in the bathtub, covering the water line ditch, removing brush and grading the yard. The list stated that most of these items were "to be completed as soon as possible when the weather clears." According to Mrs. Milliken, Ms. White assured her that if Mr. Mason did not finish, he would have his license taken away.

The Millikens had a number of conversations with Mr. Mason about completing the work that needed to be done. At one point, Ms. White called the Board for Licensing Contractors and had them send complaint forms to the Millikens.

---

[1]Ms. White did not deny that she told the Millikens that Mr. Mason was licensed and reputable. In an affidavit, she explained that she met Mr. Mason through a friend with whom she was considering a development project in Wilson County. As they discussed the possibility of Mr. Mason working on the project, Ms. White stated that Wilson County required contractors to be licensed. Mr. Mason purportedly stated that he was not licensed, but a young man who was with him stated that they were in the process of getting their license. Ms. White stated that when she made the statement to the Millikens, she believed that Mr. Mason had received his license by then because the licensing process usually took only one or two months. It is undisputed that the house purchased by the Millikens was located in Smith County, which did not require contractors to be licensed.

[2]The record shows that Mr. Mason had constructed only two homes prior to building the Millikens' residence, but Ms. White stated she was aware of several other houses he was constructing at the same time.

Ms. Milliken testified that Mr. Mason came over to the house shortly after the closing and told her he had "shorted" her 150 feet of field line in the septic tank. He asserted that nothing had to be fixed, however. Ms. Milliken called Ms. White about that conversation, and Ms. White advised her to contact the health department.

Mrs. Milliken testified that the deck was never waterproofed and, by the time of trial, it was warped and rotting, the nails were backing out, and the mitred ends of boards did not meet. Mrs. Milliken complained that in her eighteen-month-old house the nails were backing out on the interior floors, causing the carpet to lump, the floor was sagging in the kitchen, the fireplace was never trimmed out, water poured into the house through the chimney during rain storms, the air conditioner did not cool the upstairs and broke during the first several months of use, the dishwasher would not drain, and the stove emitted black smoke which ruined the surface because it had not been hooked up properly. In addition, she reported that the ice maker was never hooked up, the bathtub was still cracked, the single exterior spigot leaked, and no grading or landscaping was ever done on the property.

When the Millikens attempted to lodge a complaint against Mr. Mason with the Board for Licensing Contractors, they were informed that Mr. Mason's license could not be found. After contacting their realtor to find Mr. Mason's license number they discovered that Mr. Mason did not have a license. Both Mr. and Mrs. Milliken testified that if they had known Mr. Mason was unlicenced, they would not have purchased the house. Smith County, where the house was located, had no licensing requirements for builders.

Upon realizing that the Board for Licensing Contractors could provide them with no relief, the Millikens commenced this action against the builder, his wife, his company, and Ms. White and her employer, Crye-Leike. Their complaint alleged seven claims, only two of which are relevant to this appeal.[3] One was a tort claim of negligent misrepresentation, alleging that Ms. White failed to exercise reasonable care in obtaining or communicating information to the Millikens and consequently gave them false information regarding the competency and credentials of the builder, inducing them to purchase the residence. They asked for compensatory damages for all financial losses incurred as a result of purchasing the residence. The other claim was an alleged violation of the Tennessee Consumer Protection Act (TCPA). As originally filed, that count alleged specific conduct by Mr. Mason and also included general allegations that "Defendants" violated the Act by engaging in unfair and deceptive acts in violation of Tenn. Code Ann. § 47-18-104(27). They requested actual damages and asserted they were entitled to treble damages pursuant to Tenn. Code Ann § 47-18-109(a)(3) and (4) for Defendants' knowing and willful violations of the Act, as well as rescission, attorney's fees and costs.

---

[3]After calling Mr. Mason as their first witness and conducting a brief examination of him, the Millikens nonsuited their claims against Mr. Mason and M & M Builders. There appears to be no dispute that the counts of breach of implied warranty of workmanlike construction, fraudulent misrepresentation, breach of contract, *quantum meruit*, and fraud were dismissed. In addition, those portions of the Consumer Protection Act count relating solely to Mr. Mason were also dismissed.

The case was tried for three days in November 1998. After the evidence and arguments were presented, the trial court instructed the jury on the Tennessee Consumer Protection Act and the tort of negligent misrepresentation. The court then provided the jury with the verdict form below, which the jury completed as follows:

1. Do you find that Defendant Brenda White engaged in acts or practices which were deceptive to Plaintiffs in violation of the Tennessee Consumer Protection Act? Yes _X_ No__

2. Did the Plaintiffs suffer a loss of money, property or thing of value as a result of the unfair or deceptive act or practice? Yes ___ No_X_

If you answered NO to question number 2, you are not required to answer the remaining questions. If you answered YES to question number 2, proceed to question number 3.

3. Did Ms. White wilfully and/or knowingly violate the Tennessee Consumer Protection Act? Yes ____ No ____

4. Do you find that Defendant Brenda White engaged in negligent misrepresentation as the Court has defined it? Yes _X_ No ___

5. If your answer to Interrogatory No. 1, No. 3 or No. 4 is "Yes," did Plaintiff suffer damages as a result? Yes _X_ No __

6. If you found any party to be at fault, considering the fault of one hundred percent (100%), what percentage of fault do you attribute to each of the parties?
    Plaintiffs . . .                                (0-100%)      _10 %_
    Defendant Crye-Leike/B. White . . .   (0-100%)      _10 %_
    Defendant Mason (the builder) . . .    (0-100%)      _80%_

7. Decide the amount of damages sustained by the plaintiffs - taking into account any failure on behalf of the plaintiffs to mitigate their damages. Do not reduce those damages by any percentage of fault you may have assigned to the plaintiffs. It is the responsibility of the Judge, after you return your verdict, to reduce the damages you award, if any, by the percentage of fault you assign to plaintiffs. What amount of damages, if any, do you find were sustained by the plaintiffs?

    TOTAL DAMAGES          $_12,500.00_

As indicated, the form itself instructed the jury that a "no" answer to question 2 ended their task. However, during its deliberations, the jury inquired about the verdict form, "By answering no to Question No. 2, which questions do we need to pass over and which questions do we need to

answer?" After consulting with counsel, the court responded: "If answer to Question 2 is no, skip to No. 4 and answer 4, 5, 6, and 7."

Because Ms. White and her employer, the only remaining defendants, were liable for only 10% of the damages, the Plaintiffs were awarded $1,250. After the trial court's denial of various post-judgment motions, the plaintiffs appeal, contending that the verdicts were inconsistent and irreconcilable. They also assert that the trial court erred in allowing the jury to apportion fault on the negligent misrepresentation claim, and that the court improperly assessed costs.

## I.

Our review of this case is governed by Tenn. R. Civ. P. 13(d), which permits findings of fact by juries in civil actions to "be set aside only if there is no material evidence to support the verdict." Tenn. R. Civ. P. 13(d). This highly deferential standard of review requires us "to take the strongest legitimate view of the evidence in favor of the verdict, assume the truth of all the evidence in support thereof, allow all reasonable inferences to sustain the verdict and disregard all to the contrary." *Johnson v. Cargill, Inc.*, 984 S.W.2d 233, 234 (Tenn. Ct. App.1998). "Where the record contains material evidence supporting the verdict, the judgment based on that verdict will not be disturbed on appeal." *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994).

Well-settled law requires courts to construe the terms of a verdict in a manner that upholds the jury's findings, if it is able to do so. *Briscoe v. Allison*, 290 S.W.2d 864, 868 (Tenn. 1956). We must presume that the jury followed the instructions given. *Perkins v. Sadler*, 826 S.W.2d 439, 443 (Tenn. Ct. App. 1991).

## II. Inconsistent Verdicts

The Millikens argue that the trial court should have granted their motion for new trial on the basis the jury rendered a verdict that was inconsistent and irreconcilable because, on the same set of facts, it found no damages as a result of the TCPA violation,[4] but found damages of $12,500 for the negligent misrepresentation.[5] Based on that argument, the Millikens contend that the verdict must be set aside.

The Millikens are correct in their statement that a verdict which is inconsistent and irreconcilable cannot be permitted to stand. Our Supreme Court has stated:

---

[4] This is the Millikens' phrasing. We note that recovery of damages under the TCPA requires an ascertainable loss as well as a deceptive act or practice. Tenn. Code Ann. §§ 47-18-109(a)(1).

[5] The distinction between the two claims is important for two reasons. First, under the TCPA, a plaintiff who proves a willful or knowing violation with damages may, under certain circumstances, receive treble damages and attorney fees, Tenn. Code Ann. § 47-18-109(a)(4), -109(e)(1), while an unintentional tort claim carries no enhanced penalties. Second, damages under the TCPA are not subject to a comparative fault analysis.

> Litigants are entitled to have their rights settled by a consistent and intelligible verdict concurred in by the trial judge and free from the vice or caprice or whim on the part of the jury. . . . Where a judgment is based upon inconsistent findings by a jury it is the duty of the appellate court to reverse and remand the case for a new trial.

*Milliken v. Smith*, 405 S.W.2d 475, 477 (Tenn. 1966) (quoting *Penley v. Glover*, 205 S.W.2d 757, 759 (Tenn. Ct. App. 1947)); *see also Concrete Spaces v. Sender*, 2 S.W.3d 901, 911 (Tenn. 1999).

In determining whether a verdict is irreconcilable and inconsistent,

> [i]t is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent upon the court to do so.

*Hogan v. Doyle*, 768 S.W.2d 259, 263 (Tenn. Ct. App. 1988) (quoting *Templeton v. Quarles*, 374 S.W.2d 654, 660 (Tenn. Ct. App. 1963)).

The Millikens submit that the jury "could have found that Ms. White's misrepresentations proximately caused no damages to Appellants. But [it] could not logically find that the very deceptive act upon which the statutory claim was premised caused damages only sounding in tort. The proximate cause analysis was identical in both claims." They contend "the misrepresentations were the very deceptive acts upon which the Consumer Protection Act claim was premised." In light of this court's duty under *Hogan v. Doyle*, we must analyze this argument considering the causes of action involved, the claims and evidence regarding the conduct supporting those causes of action, and the verdict form and instructions.

Important to this analysis, however, is some discussion of the effect of the Millikens' decision to nonsuit their claims against the builder, Mr. Mason, and his company after a brief examination of him as their first witness. As explained earlier, a number of the counts in the complaint were specific to Mr. Mason. In his opening statement, counsel for the Millikens explained that Mr. Mason had made some mistakes, but that the Millikens were not saying he was a bad person. He was "an old boy" who started the house for himself, but later enlarged it without making necessary adjustments to his plans, and he had not told anyone he was a licensed contractor. The Millikens did inform the jury, however, that their claim against Mr. Mason had to do with his warranty, "asking him to stand behind that."

The remainder of the opening was devoted to describing the problems with the house and the reason for the lawsuit against Ms. White and Crye-Leike. In particular, counsel mentioned negligent misrepresentation and the Consumer Protection Act. He mentioned two separate acts of misrepresentation by Ms. White: originally telling the Millikens that Mr. Mason was licensed and the wording on the contract that the buyers had a one-year warranty per requirements of the Board

for Licensing Contractors.[6]

Mr. Mason testified that he did not have a contractor's license and that he had never applied for one. He also stated he had never represented himself as holding a license. He testified that he signed the sales contract without reading all of it. However, he knew when he signed it, because Ms. White told him, that he was giving the Millikens a one-year warranty. He denied any knowledge of the wording regarding the licensing board or its effect. He was, nonetheless, unwavering in his testimony that he agreed to a one-year warranty for his work on the house.

After examination of Mr. Mason, counsel for the Millikens announced they were taking a voluntary dismissal pursuant to Tenn. R. Civ. P. 41 as to Mr. and Mrs. Mason and that the Millikens would "proceed against the corporation [Crye-Leike] and Ms. White." It is apparent from the record that the parties and the trial court proceeded with the trial with the understanding that only two causes of action remained against the remaining defendants, Ms. White and Crye-Leike. Those were described, in fact, in plaintiffs' opening statement: negligent misrepresentation and violation of the TCPA. Statements at the jury instruction conference also make it clear that those were the only two remaining causes of action. No intentional torts remained, and no request for punitive damages. Discussion was had at that time regarding the requirement that the jury find any acts constituting a violation of the TCPA to have been willful and knowing before the possibility of treble damages was triggered.

In closing argument, it was again made clear that the Millikens had two claims. Regarding the first, the Millikens argued that Ms. White was liable for negligent misrepresentation because (1) she had told the Millikens that Mr. Mason was a licensed contractor when they first asked, prior to their signing the sales contract, and (2) she had included in the contract a "One-year warranty provided by builder per requirement of the Tennessee Contractor Licensing Board." The jury was specifically told, "That representation [the warranty language] is another misrepresentation because it's made in Ms. White's handwriting herself with an absolute indifference to what the truth was." The Millikens also argued that Ms. White had violated the TCPA by the deceptive acts of (1) telling the Millikens that Mr. Mason was licensed and (2) representing that the Millikens had a warranty that didn't exist. Violations of three subsections of the Act were argued: deceptive acts or practices; causing likelihood or confusion as to the affiliation with or certification by another, as evidenced by Ms. White's statement that Mr. Mason was licensed; representing that a warranty confers or involves rights or remedies which it does not have or involve, as evidenced by the language written in by Ms. White regarding the warranty; and the catchall, any other act or practice which is deceptive to the consumer, as evidenced by the representation that Mr. Mason was licensed.

These facts are important to the question before us of whether the jury's verdict is inconsistent. We conclude that the verdict is consistent with the facts as presented and argued and with the law as charged. As noted by the Defendants, the two claims are distinct causes of action

---

[6]At the hearing on the defendants' motion for directed verdict, the Millikens stated they would not take the issue of whether Ms. White's statement that Mr. Mason was "reputable" to the jury and had presented no proof on that issue.

with different elements[7] and there were at least two separate acts by Ms. White upon which the jury could have based a finding of either negligent misrepresentation or a violation of the TCPA.

Regarding negligent misrepresentation, this court has held:

One pursuing a claim of negligent misrepresentation must prove by a preponderance of the evidence that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information.

*Hill v. John Banks Buick, Inc.*, 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993) (citations omitted). Our Supreme Court has described the tort as "recognized . . . in connection with business or professional persons who carelessly or negligently supply false information for the guidance of others in their business transactions." *Houghland v. Security Alarms & Servs., Inc.*, 755 S.W.2d 769, 774 (Tenn. 1988).

An individual may bring a private action for violation of the Tennessee Consumer Protection Act, and, to be successful, must prove an unfair or deceptive act or practice affecting the conduct of trade or commerce and an ascertainable loss.

Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value . . . as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1). Without actual ascertainable loss resulting from the unfair or deceptive acts, an action for money damages is precluded. In the case before us, the jury answered "yes" when asked if Ms. White "engaged in practices which were deceptive to Plaintiffs in violation of the Tennessee Consumer Protection Act," but answered "no" when asked if "Plaintiffs suffer[ed] a loss . . . as a result of the unfair or deceptive act or practice."

The jury clearly found that the Millikens had not sustained a loss as a result of whatever deceptive acts and practices, prohibited by the TCPA, they found had occurred. In addition to answering "No" to question number 2 on the form, the jury asked for guidance, "By answering No to Question No. 2, which questions do we need to pass over and which questions do we need to answer?"

On the other hand, the jury then answered "yes" when asked if Ms. White had engaged in negligent misrepresentation. In response to question 5 ("If your answer to Interrogatory No. 1, No.

---

[7]The record shows that the jury was instructed as to the elements of each claim.

3, or No. 4 is 'Yes,' did Plaintiff suffer damages as a result?"), the jury answered "Yes." Because the answer to question number 2 was that no loss resulted from deceptive acts prohibited by the TCPA, the only logical conclusion is that the response to number 5 means the jury found that there were damages as a result of the negligent misrepresentation.

It is the fact that the jury found that the Millikens had been damaged by the negligent misrepresentation but had not sustained a loss as a result of the unfair or deceptive act or practice that forms the basis of the Millkens' argument that the verdict is inconsistent. The crux of their argument is that the same conduct constituted the statutory violation as well as the tort, and, the proximate causation analysis being the same, it was inconsistent for the jury to find damages resulted from only the tort.

The flaw in this argument is that the jury was presented with evidence of more than one separate act by Ms. White, either one of which the Millikens argued could sustain either cause of action. In addition to the two separate causes of action, the Millikens argued two separate and distinct acts, on which either claim might be based. The first is Ms. White's representation, prior to their entering the contract to purchase the property, that the builder was a licensed contractor. The second is that the Millikens were receiving a one-year builder's warranty per requirement of the Board for Licensing Contractors. As argued by the Defendants, the jury's finding regarding either claim could have been based upon either act.

The jury could have found that Ms. White's representation that the builder was licensed was "negligent" and caused damages to the Millikens, but did not rise to the level of "unfair or deceptive," while also finding that Ms. White's representation that Plaintiffs were receiving a one-year warranty was "unfair or deceptive" but that no loss was incurred as a result of that statement.[8] Alternatively, the jury could have found that Ms. White's statement that Plaintiffs were receiving a one-year warranty was "negligent"and damaged the Millikens, but was not "unfair or deceptive," while also finding that Ms. White's statement that the builder was a licensed contractor was "unfair or deceptive" but that the Millikens suffered no loss as a result of the statement. As stated above, if a court can construe the terms of a verdict in a manner that upholds the jury's findings, it must do so. *Briscoe v. Allison*, 290 S.W.2d at 868. We find that under either of the above scenarios, the findings of the jury are reconcilable. Because there is material evidence to support the verdict, it must be upheld.

---

[8]The Millikens argued the specific provision of the TCPA regarding warranties, and the jury may have been convinced that the language on the contract was a deceptive act as defined in the provision of the TCPA quoted them by the Millikens. Because Mr. Mason testified that he agreed to provide the Millikens with a one-year warranty, the jury could have determined that the Millikens suffered no loss as a result of the "as required by the Board of Licensing Contractors" language. During the conference on jury instructions, the trial court, outside the presence of the jury, observed that there had been no proof that such a warranty was any better than the warranty the Millikens received. We are not convinced that the language in the contract actually gave the Millikens anything other than a one-year warranty except to the extent the Board for Licensing Contractors has adopted rules which more specifically define the terms of such a warranty. In other words, the language does not appear to us to grant the Millikens any enforcement or other rights, but at most describes the type of warranty.

## III. Adequacy of the Verdict Form

The Millikens maintain that the jury verdict form was inadequate and confusing. Our Supreme Court has stated, "Even if a verdict is defective in form, it is to be enforced if it sufficiently defines an issue in such a way as to enable the court to intelligently articulate a judgment." *Concrete Spaces,* 2 S.W.3d at 911 (case remanded for a new trial because the verdict form left open "the possibility that the jury wrongly awarded punitive damages in conjunction with the TCPA rather than in connection with a common law claim for recovery").

The record includes the transcript of the conference on the jury verdict form and instructions. It is clear the trial court and counsel labored to prepare accurate instructions and verdict form, and had to revise previous submissions because of the dismissal of Mr. Mason and the claims against him. It is also clear that the part of the form to which the Millikens object was the product of a conscious decision to separate instructions about and questions related to the two separate causes of action.

The Millikens assert that the two separate questions about damages confused the jurors by suggesting to them that the damages were "somehow distinguishable under the facts before them." The Millikens contend that the form should have asked whether the plaintiffs suffered damages in one question rather than asking the question separately as to each cause of action. This argument incorrectly assumes that the damages analysis is the same under both claims. As discussed above, the two claims were separate and distinct causes of action. The verdict form properly reflected the distinction. The TCPA claim was statutory, based upon "deceptive" acts, and the form included the statutory language regarding ascertainable loss. Under certain circumstances, the court could award enhanced penalties, but only if the jury first found that the plaintiffs had sustained a loss due to the deceptive acts or practices (Question 2) and then found that the deceptive acts were willfully and knowingly made (Question 3).

On the other hand, the negligent misrepresentation claim sounded in tort, was based upon a lack of "reasonable care," and only allowed for compensatory damages. Punitive damages were not at issue. The form properly separated the causes of action and the damages and avoided complications which might have otherwise resulted from a general finding of damages. *See Concrete Spaces,* 2 S.W.3d at 911.

In addition, because the jury asked for, and was given, clarification on the instructions in answering the special interrogatories, we find no other defect in the form which would require a finding it was inadequate or confusing.

## IV. Comparative Fault

The Millikens maintain that apportionment of fault on the negligent misrepresentation claim was error. They assert that there was no evidence that the builder ever misrepresented his status to them or that they, themselves, were in any way culpable.

Tennessee adopted the doctrine of comparative fault for negligence actions in *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992) ("In all trials where the issue of comparative fault is before a jury, the trial court shall instruct the jury on the effect of the jury's finding as to the percentage of negligence as between the plaintiff or plaintiffs and the defendant or defendants.") The Court has continued to interpret the doctrine in light of its original goals.

> We believe that a system wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault is the system that best achieves our stated goal in *McIntyre v. Balentine* of linking liability and fault.

*Volz v. Ledes,* 895 S.W.2d 677, 680 (Tenn. 1995).

To that end, the doctrine allows the fault of nonparties to the lawsuit to be considered where plaintiffs have a cause of action against the nonparty. *Samuelson v. McMurtry,* 962 S.W.2d 473, 475 (Tenn. 1998); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 428 (Tenn. 1996).[9] Because negligent misrepresentation sounds in tort, it is subject to all the defenses of a negligence action. *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 136 (Tenn. Ct. App. 1982); *see also Glanton v. Beckley*, No. 01A01-9606-CV-00283, 1996 WL 709373 at *9 n.4 (Tenn. Ct. App. Dec. 11, 1996) (Koch, J., concurring) (noting that since *McIntyre v. Ballantine*, the doctrine of comparative fault applies in negligent misrepresentation cases). The jury was properly charged with apportioning fault among the Millikens, Ms. White/Crye-Leike Realtors, and the builder, Mr. Mason.

Plaintiffs also assert that to allow apportionment here "invites the jury to assess relative degrees of damages, not fault." Our Supreme Court has discussed the related concepts of comparative negligence and comparative fault:

> The term "comparative negligence" is defined as the measure of the plaintiff's negligence in percentage terms used for the purpose of reducing the plaintiff's recovery from the defendant in proportion to the percentage of negligence attributed to the plaintiff. It encompasses the system of determining the damages attributable to the plaintiff as against the defendants. . . . The term "comparative fault" is defined as those principles which encompass the determination of how to "apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence."

*Owens*, 915 S.W.2d at 425 n.7 (citations omitted). Therefore, we find no error in allowing the apportionment.

---

[9]Although a defendant who fails to identify potential tortfeasors who are not already parties, pursuant to Tenn. Code Ann. § 20-1-119(a), cannot attribute fault to those nonparties, that rule does not apply where plaintiffs fail to join potential tortfeasors after notice from the defendant. Obviously, where the plaintiff dismisses a defendant, the absence of potential defendant from the litigation is attributable to the plaintiff.

To the extent the Millikens' objection is to the actual allocation of fault, we must uphold the jury's verdict if there is any material evidence to support it. *Turner v. Jordan*, 957 S.W.2d 815, 824 (Tenn. 1997) (trial court, in its role as thirteenth juror, lacked authority to reapportion comparative fault); *Fye v. Kennedy*, 991 S.W.2d 754, 762 (Tenn. Ct. App. 1998) (concluding that *Turner* precludes even a partial reallocation of fault). There is evidence in the record from which the jury could have determined that Ms. White relied on earlier representations of Mr. Mason's employee that they were in the process of obtaining a license when she assured the Plaintiffs that he was licensed. Later, Mr. Mason signed the agreement assuring that he was providing a warranty pursuant to the requirements of the Tennessee Board for Licensing Contractors, which the jury could have considered a misrepresentation on his part that he had a license. The Millikens testified that they interpreted that provision as a representation that he was licensed. Thus, the evidence supports the jury's apportionment of fault for the damages incurred to the builder, Mr. Mason. Likewise, a finding of fault on the part of the Millikens contributing to the damages they suffered is supported by the evidence. They could have had the home inspected, or they could have delayed the closing until the repairs they listed had been made. Therefore, we find no error in the trial court's allowance of apportionment of fault.

## V. Costs

The trial court split the court costs equally between the parties and denied the Millikens' request for attorney fees and discretionary costs. The Plaintiffs appeal, claiming they are the prevailing party and entitled to court costs, discretionary costs, and attorney fees, based on the jury's finding that the Defendants had engaged in unfair and deceptive acts in violation of the TCPA and had made negligent misrepresentations.

As a general rule, litigants pay their own attorney fees absent a statute or an agreement providing otherwise. *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305 (Tenn. Ct. App. 1984). The Millikens claim their entitlement to such fees under the TCPA, stating that the court "should award reasonable costs and attorney fees to Plaintiffs who establish that a Defendant engaged in practices which were deceptive to Plaintiffs in violation of" that Act. Tenn. Code Ann. § 47-18-109(e)(1) provides that "upon a finding by the court that a provision of this part has been violated, the court may award . . . reasonable attorney fees and costs." The Millikens contend that the jury's finding that Ms. White "engaged in acts or practices which were deceptive . . . in violation of the Tennessee Consumer Protection Act," entitled them to attorney fees, obviously equating the jury's finding of one element of the cause of action with the statute's requirement of a violation of the Act.

We do not agree. As explained earlier, recovery in a private action under the TCPA requires both unfair or deceptive acts and an ascertainable loss attributable to those acts. Tenn. Code Ann. § 47-18-109(a)(1). Because the jury specifically found no loss attributable to deceptive acts, the plaintiffs have failed to prove the elements necessary for award of damages. We think the same reasoning applies to an award of attorney fees. Because the plaintiffs have failed to prove the statutory elements entitling them to damages, they have similarly failed to show their eligibility for

an award of attorney fees under the statute. We think recovery of either damages or attorney fees is limited to those persons who demonstrate an ascertainable loss resulting from the deceptive act.

> T.C.A. § 47-18-109 confers a private right of action on an individual who suffers an ascertainable loss as a result of an unlawful practice under the Act. A plaintiff's recovery is normally limited to actual damages and reasonable attorney's fees . . .

*Haverlah*, 674 S.W.2d at 305 (quoting *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 591 (Tenn. Ct. App 1980)). The trial court herein found no grounds for an award of attorney's fees, and we affirm.

We also note that a party who is awarded damages under the Act is not automatically entitled to attorney's fees. The statutory language is "the court may award." In view of the jury's verdict in this case, there is no basis for determining that the trial court acted outside the broad discretion given it by that language, even if plaintiffs were eligible for an award of attorney fees.[10]

For the same reasons, plaintiffs' reliance on the TCPA for an award of costs is misplaced. However, another basis for an award of costs exists, specifically, Tennessee Rule of Civil Procedure 54.04. That rule provides in pertinent part:

> (1) Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs . . .

> (2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. . . .

Tenn. R. Civ. P. 54.04.

The rule distinguishes between "costs included in the bill of costs prepared by the clerk," or court costs, and "discretionary costs." While the rule appears to distinguish slightly in the standards applied by the court (court costs are allowed to the prevailing party unless the court directs otherwise; discretionary costs are available only in the court's discretion), such a distinction has not always been clearly made by the courts.

Our courts have interpreted the rule as giving the trial court discretion in the award of both court costs and discretionary costs. *See Noland Co. v. Crye*, 726 S.W.2d 531, 532 (Tenn. Ct. App. 1986) (decision to award court costs is within the "sound discretion of the trial judge"); *Sanders v.*

---

[10] *See also Kline v. Benefiel*, No. W1999-00918-COA-R3-CV, 2001 WL 25750 (Tenn. Ct. App. Jan. 9, 2001) (perm. app. denied May 21, 2001).

*Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) ("trial courts are free to apportion [discretionary] costs between the litigants as the equities of each case demand").

We, then, review the trial court's decisions regarding costs for an abuse of that discretion. That standard

> requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

*State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000) (citations omitted).

Even considering the discretion given to the trial court, appellate courts have established some guidelines by which we review those decisions. In *Sanders v. Gray*, this court discussed the factors to be considered in awarding discretionary costs as follows:

> Generally, trial courts award such [discretionary] costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. The successful party is not, however, automatically entitled to an award of costs. Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs.

*Sanders v. Gray*, 989 S.W.2d at 345 (citations omitted).

Discretionary costs are not punitive, but are merely another method of making the prevailing party whole. Even though the prevailing party is not automatically entitled to an award of discretionary costs simply because it prevailed, courts generally award discretionary costs if they are reasonable and if the party requesting them has filed a timely, properly supported motion satisfying the requirements of Tenn. R. Civ. P. 54.04(2). *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000); *Turner v. Turner*, No. 01A01-9506-CV-00255, 1997 WL 136448 at *17 (Tenn. Ct. App. Mar. 27, 1997) (no Tenn. R. App. P. 11 application filed). Similarly, the language of Tenn. R. Civ. P. 54.04 (1) implies that a prevailing party will generally be awarded court costs.

Thus, identification of the prevailing party is a relevant factor in assessing costs. This court has determined that an award of less than the amount of damages sought does not negate the plaintiff's status as a prevailing party. *Sanders v. Gray*, 989 S.W.2d at 345. Similarly, we have

previously rejected an argument that costs should be assessed according to the fault assigned. *Hollifield v. City of Morristown*, No. 03A01-9605-CV-00172, 1996 WL 539766 at *2 (Tenn. Ct. App. Sept. 25, 1996) (no Tenn. R. App. P. 11 application filed) (rejecting the argument that in every case where comparative fault is determined that costs must be precisely based on the degree of fault of each defendant). Thus, where there are no counterclaims or crossclaims involved, a plaintiff who is awarded damages is generally considered to be the prevailing party.

The trial court in this case split court costs equally based upon the jury's finding that both parties were equally at fault, i.e., 10% each. We disagree with this reasoning as a basis for failing to award court costs to the plaintiffs. The only judgment awarded in this case was against the defendants, Ms. White and Crye-Leike, thereby making the Millikens the prevailing party. While a trial court has discretion in apportioning court costs, a denial of costs to the prevailing party must be based upon reasoned grounds. However, on appeal, a plaintiff must show extraordinary circumstances to overcome the trial court's award of court costs in view of the discretion given the court in that area. *Lewis v. Bowers*, 216 Tenn. 414, 423, 392 S.W.2d 819, 823 (Tenn. 1965); *Rogers v. Russell*, 733 S.W.2d 79, 88 (Tenn. Ct. App. 1986) (such determinations will be reviewed on appeal under "very extraordinary circumstances"). We do not find such extraordinary circumstances herein, nor do we find the trial court's apportionment inequitable in view of the plaintiffs' voluntary dismissal of the other defendant on the first day of trial. Undoubtedly, some of the court costs were applicable to that defendant's participation in the litigation up to his dismissal. Under these circumstances, we do not find it inequitable for the trial court to refuse to tax all court costs to the one remaining defendant.

The trial court denied the plaintiffs' request for discretionary costs, and the record does not reflect the reasoning of the court. The Millikens were the prevailing party and presented a timely, supported motion for discretionary costs. Where the record does not include any basis for denial of the costs, we have reversed the trial court's denial and remanded for a determination of whether the costs were reasonable. *Dent v. Holt*, No. 01A01-9302-CV00072, 1994 WL 440916 at *3 (Tenn. Ct. App. Aug. 17, 1994) (modified on rehearing, 1994 WL 503891 (Tenn. Ct. App. Sept. 16, 1994)). In the exercise of its discretion, the trial court should have made a determination as to whether the discretionary costs were reasonable and necessary, and we fail to find such examination or its results in the record.

Again, we are aware that reasons may exist for the trial court's decision to apportion court costs and to deny some of the discretionary costs as unreasonable or unnecessary. Primarily, the Millikens' decision to nonsuit their claims against Mr. Mason on the first day of trial presents a situation where many of the discretionary costs may be determined unreasonable or unnecessary to the Millikens' claims against Ms. White and Crye-Leike. However, the record provides us no basis upon which to make that determination. We vacate the trial court's denial of all discretionary costs and remand for a determination of the reasonableness of the costs, and whether any or all of them should be awarded.

## VI. Conclusion

For the reasons stated above, we affirm the jury's verdict, the trial court's denial of attorney's fees, and the trial court's apportionment of court costs, but vacate the denial of any discretionary costs. We remand this case to the trial court for further consideration consistent with this opinion. Costs of this appeal are taxed one half to the Millikens and one half to the Defendants, Ms. White and Crye-Leike Realtors, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE