Alice J. BANKS

v.

ELKS CLUB PRIDE OF TENNESSEE 1102 et al.

Supreme Court of Tennessee, at Nashville.

June 3, 2009 Session.

Jan. 13, 2010.

Garrett E. Asher, Matthew A. Moushon, and Jennifer G. Rowlett, Nashville, Tennessee, for the appellant, The Elks Club Pride of Tennessee 1102, Pride of Tennessee Lodge of Elks No. 1102, Improved Benevolent, and Elks Lodge 1102 Pride of Tennessee.

Dixie W. Cooper, Carol Davis Crow, and Brian P. Mannokian, Nashville, Tennessee, for the appellant, Robert H. Boyce, M.D., and Premier Orthopaedics & Sports Medicine, P.C.

David E. High, Nashville, Tennessee, for the appellee, Alice J. Banks.

Daniel L. Clayton, Nashville, Tennessee, for the Amicus Curiae, Tennessee Association of Justice.

Matthew S. Russell and Melanie M. Stewart, Germantown, Tennessee, for the Amicus Curiae, Tennessee Defense Lawyers Association.

## OPINION

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and SHARON G. LEE, JJ., joined.

This appeal involves the continuing viability in Tennessee of the common-law principle that imputes liability to an original tortfeasor for enhanced physical harm caused by the normal efforts of third persons to render aid which an injured party reasonably requires. A guest at a private club was injured on the club's premises. The injuries to the guest's back were compounded first by the conduct of her surgeon and second by the actions or inactions of a nursing home where the guest was a patient following her surgery. The guest filed separate lawsuits against the private club and her surgeon in the Circuit Court for Davidson County. After the cases were consolidated, the club and the surgeon moved to amend their answers to assert comparative fault claims against the nursing home. The trial court denied their motions but granted them permission to pursue an interlocutory appeal. After the Court of Appeals declined to consider the interlocutory appeal, the club and the surgeon sought this Court's permission for an interlocutory appeal. We granted their

application. We now hold that an original tortfeasor is not jointly and severally liable for the further aggravation of an original injury caused by a subsequent tortfeasor's medically negligent treatment of the injury caused by the original tortfeasor's negligence. Therefore, we have determined that the trial court erred by denying the motions of the club and the surgeon to amend their complaints to assert comparative fault claims against the nursing home.

## I.

Alice J. Banks attended a social event at an Elks Lodge in Nashville on March 24, 2006. While she was there, the chair on which she was seated collapsed, causing serious injuries to Ms. Banks's back.[1] Ms. Banks consulted with Dr. Robert H. Boyce, a physician affiliated with Premier Orthopaedics and Sports Medicine, P.C. ("Premier Orthopaedics"), who recommended lumbar surgery at the L3–L4 and L4–L5 levels. The procedure consisted of a decompression laminectomy and fusion. Ms. Banks agreed to have the procedure performed.

On May 16, 2006, Ms. Banks underwent surgery at Centennial Medical Center. While Dr. Boyce's operative report indicates that he performed a lumbar laminectomy and fusion at the L3–L4 and L4–L5 vertebrae as intended, he actually performed the surgery upon the L2–L3 and L3–L4 vertebrae. It was only after the surgery was completed that Dr. Boyce realized he mistakenly performed the surgery at the L2–L3, rather than the L4–L5 vertebrae. As a result, Ms. Banks was

required to undergo a second surgery on May 17, 2006.

Following Ms. Banks's surgeries, she was transferred to Cumberland Manor Nursing Home ("Cumberland Manor") for further recuperation and rehabilitation. While a patient at Cumberland Manor, Ms. Banks developed a serious staphylococcus infection that required additional surgeries and extensive care and treatment.

On March 23, 2007, Ms. Banks filed suit in the Circuit Court for Davidson County against the Elks Club Pride of Tennessee 1102, Pride of Tennessee Lodge of Elks No. 1102 Improved Benevolent, and Elks Lodge 1102 Pride of Tennessee[2] ("Elks Lodge defendants"). She alleged that the negligence of the Elks Lodge defendants had caused her back injuries. The case was assigned to the Sixth Circuit Court.

On May 10, 2007, Ms. Banks filed a separate lawsuit against Dr. Boyce and Premier Orthopaedics ("Dr. Boyce") in the Circuit Court for Davidson County. She asserted claims of medical negligence and medical battery based on Dr. Boyce's performance of an unauthorized procedure. This case was assigned to the Fifth Circuit Court.

Dr. Boyce later requested the Fifth Circuit Court to transfer Ms. Banks's lawsuit against him to the Sixth Circuit Court where her lawsuit against the Elks Lodge defendants was pending. Ms. Banks agreed to the transfer, and on January 8, 2008, the Fifth Circuit Court filed an order transferring Ms. Banks's case against Dr.

---

1. The facts set forth in this opinion are drawn from the current record on appeal. Because the parties have yet to have a full hearing with regard to these facts, our inclusion of any particular fact in this opinion should not be construed as a conclusive finding-of-fact that prevents the parties from presenting additional evidence regarding the fact or as pre-

venting the trial court from making contradictory findings of fact based on the evidence actually presented by the parties.

2. Elks Lodge 1102 Pride of Tennessee owns, and the three defendants collectively operate, the Elks Lodge on Jefferson Street where Ms. Banks asserts she was injured.

Boyce to the Sixth Circuit Court. On January 16, 2008, the Sixth Circuit Court entered an order consolidating the two cases for management and discovery purposes.

On May 30, 2008, the Elks Lodge defendants filed a Tenn. R. Civ. P. 15.01 motion to amend their answer to assert a comparative fault defense against Cumberland Manor. They alleged that they had learned during the discovery process that Cumberland Manor's improper care and treatment had contributed to Ms. Banks's staphylococcus infection. They also asserted that this infection had aggravated Ms. Banks's injuries and damages and that Ms. Banks was seeking to hold them responsible for these additional injuries and damages. The Elks Lodge defendants also reserved the right "to amend their comparative fault defense to allege fault of others throughout the course of discovery and trial." On June 2, 2008, Dr. Boyce also sought to amend his answer to assert a comparative fault defense against Cumberland Manor, adopting the same language set forth in the Elks Lodge defendants' motion.

Ms. Banks opposed the defendants' motions to amend their answers to assert a comparative fault defense against Cumberland Manor. She argued that the defendants' efforts to assert a comparative fault defense "against a subsequent healthcare provider for alleged negligent medical treatment that was brought on by the injuries negligently caused by the named de-

fendants is inappropriate." In their trial court briefs, the parties argued vigorously over whether what they referred to as the "original tortfeasor rule" or the "original tortfeasor doctrine"[3] survived this Court's decision in *McIntyre v. Balentine,* 833 S.W.2d 52 (Tenn.1992) and its progeny.

On August 15, 2008, the trial court entered an order denying the Elks Lodge defendants' and Dr. Boyce's motion to amend their complaints to assert comparative fault claims against Cumberland Manor. The court reasoned that "the holdings in the cases of *Transports, Inc. v. Perry,* 220 Tenn. 57, 414 S.W.2d 1 (1967) and *Atkinson v. Hemphill,* 1994 WL 456349 (Tenn.Ct.App.1994), [are] still good law and the proposed amendments would be futile and therefore must be denied under Rule 15, Tennessee Rules of Civil Procedure." On its own motion, the court also suggested that pursuing a Tenn. R.App. P. 9 interlocutory appeal from its decision would be appropriate. The Elks Lodge defendants and Dr. Boyce pursued an interlocutory appeal; however, on September 10, 2008, the Court of Appeals denied their application for an interlocutory appeal without comment.

On October 9, 2008, the Elks Lodge defendants and Dr. Boyce filed a Tenn. R.App. P. 9 application for permission to appeal. We granted the application on December 15, 2008. Following our decision to grant permission to appeal, Ms. Banks, seeking to avoid potentially adverse statute of limitations impact should this

---

**3.** The terms "original tortfeasor rule" and "original tortfeasor doctrine" are actually shorthand references to a concatenation of two common-law principles. The first principle is that "if one is injured by the negligence of another, and these injuries are aggravated by medical treatment (either prudent or negligent), the negligence of the wrongdoer causing the original injury is regarded as the proximate cause of the damage subsequently

flowing from the medical treatment." *Transports, Inc. v. Perry,* 220 Tenn. 57, 64–65, 414 S.W.2d 1, 4–5 (1967). The second principle is that the original tortfeasor is jointly and severally liable for the full extent of the injuries caused by the original tortfeasor and the successive tortfeasor. J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 6:3 (2d ed.2009) (hereinafter "Lee & Lindahl").

Court determine that the trial court erred in not permitting the Elks Lodge defendants or Dr. Boyce to amend their answers to assert an affirmative defense against Cumberland Manor, amended her complaint to name Cumberland Manor as a tortfeasor.

## II.

Eighteen years ago, this Court produced a sea-change in Tennessee's tort law by replacing the common-law concept of contributory negligence with the concept of contributory fault. *McIntyre v. Balentine*, 833 S.W.2d at 56. We expressly recognized at that time that many of the issues arising from the transition to a comparative fault regime would be addressed in later cases. *McIntyre v. Balentine*, 833 S.W.2d at 57. Accordingly, it has come to pass that this Court has been presented with many opportunities since 1992 to revisit, refine, and clarify many of the central tenets of *McIntyre v. Balentine* and to address their impact on Tennessee tort law.

One of the central tenets of *McIntyre v. Balentine* is that the doctrine of joint and several liability was "obsolete" because it was inconsistent with the doctrine of comparative fault. *McIntyre v. Balentine*, 833 S.W.2d at 58.[4] We explained that the doctrine of comparative fault, which would more closely link liability and fault, could not be reconciled with joint and several liability which could "fortuitously impose a degree of liability that is out of all proportion to fault." *McIntyre v. Balentine*, 833 S.W.2d at 58.

The announcement that the doctrine of joint and several liability was obsolete, while later characterized as dictum,[5] was not met with universal acceptance. Mr. McIntyre and one of the parties who filed an amicus curiae brief requested a rehearing to address "the advisability of retaining joint and several liability in certain limited circumstances." This Court declined to grant the petition for rehearing, stating that "such further guidance should await an appropriate controversy." *McIntyre v. Balentine*, 833 S.W.2d at 60.

Thus, the *McIntyre v. Balentine* decision left behind some ambiguity regarding the continuing viability of any application of the doctrine of joint and several liability. On one hand, the Court had declared the doctrine "obsolete." On the other hand, the Court had left open the possibility that it might retain the doctrine "in certain limited circumstances" in future cases. As a result, the practicing bar set out to create opportunities for the Court to decide in what circumstances, if any, the doctrine of joint and several liability could rise from the ashes of obsolescence.

In the first comparative fault cases considered by the Court, we reaffirmed that our decision in *McIntyre v. Balentine* "did abolish the doctrine of joint and several liability to the extent that it allows a plaintiff to sue and obtain a full recovery against any one or more of several parties against whom liability could be established." *Bervoets v. Harde Ralls Pontiac-Olds, Inc.*, 891 S.W.2d 905, 907 (Tenn. 1994). The following year, we repeated

---

4. In the minds of some, the limitations this Court placed on joint and several liability have had as a profound effect on tort law in Tennessee as the adoption of comparative fault. 17 John A. Day et al., *Tenn Practice: Tennessee Law of Comparative Fault* § 2:1 (2008–2009).

5. *Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn. 1995). It had earlier been characterized as judicial dictum rather than obiter dictum. *See Owens v. Truckstops of Am.*, No. 01A01–9305–CV–00208, 1994 WL 115878, at *11–12 (Tenn.Ct.App. Apr.6, 1994) (Koch, J., concurring in part and dissenting in part).

that "one of the corollaries to the adoption of comparative fault ... was the abolition of the doctrine of joint and several liability," and we "confirm[ed] that the doctrine of joint and several liability was rendered obsolete by our decision in *McIntyre v. Balentine.*" *Volz v. Ledes,* 895 S.W.2d at 680. We made the same point in 1995. *Whitehead v. Toyota Motor Corp.,* 897 S.W.2d 684, 686 (Tenn.1995).

Thus, during the three years immediately following *McIntyre v. Balentine,* the Court exhibited little inclination to return to the doctrine of joint and several liability, in any of its common-law applications, to useful service. The tide, however, began to turn in 1996. In the face of the broad obsolescence language in *McIntyre v. Balentine, Bervoets v. Harde Ralls Pontiac–Olds, Inc., Volz v. Ledes,* and *Whitehead v. Toyota Motor Corp.,* the Court announced that it had "not ... disapproved of the doctrine of joint and several liability *in a general sense* ... it [had] disapproved joint and several liability *in a particular sense,* that is, where the defendants were charged with separate, independent acts of negligence." *Owens v. Truckstops of Am.,* 915 S.W.2d 420, 431 n. 13 (Tenn.1996).

This change in direction prompted the author of *McIntyre v. Balentine* to point out in dissent that the Court was "resurrecting joint and several liability." *Owens v. Truckstops of Am., Inc.,* 915 S.W.2d at 437 (Drowota, J., dissenting in part). In response, the Court declared that "[j]oint and several liability need not be 'resurrected' ... because it has continued to be an integral part of the law, except where specifically abrogated." *Owens v. Truckstops of Am.,* 915 S.W.2d at 431 n. 13. The Court then recalibrated the extent of the obsolescence of the doctrine of joint and

several liability to circumstances "where the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury." *Owens v. Truckstops of Am.,* 915 S.W.2d at 430. In this circumstance, "each tortfeasor will be liable only for that proportion of the damages attributable to its fault. As to those tortfeasors, liability is not joint and several but several only, even though two or more tortfeasors are joined in the same action." *Owens v. Truckstops of Am.,* 915 S.W.2d at 430.

During the past fourteen years, this Court has reaffirmed its holding that the doctrine of joint and several liability, as it existed prior to 1992, is obsolete. *Ali v. Fisher,* 145 S.W.3d 557, 561 (Tenn.2004); *Carroll v. Whitney,* 29 S.W.3d 14, 16 (Tenn.2000); *Sherer v. Linginfelter,* 29 S.W.3d 451, 455 (Tenn.2000). At the same time, however, we have determined that the doctrine remains viable in several well-defined circumstances. We approved joint and several liability for defendants in the chain of distribution of a product in a products liability action. *Owens v. Truckstops of Am.,* 915 S.W.2d at 433. We determined that the doctrine of joint and several liability was not obsolete in cases involving injury caused by multiple defendants who have breached a common duty. *Resolution Trust Corp. v. Block,* 924 S.W.2d 354, 355, 357 (Tenn.1996). We have likewise approved the application of the doctrine in cases wherein the plaintiff's injury was caused by the concerted actions of the defendants. *Gen. Elec. Co. v. Process Control Co.,* 969 S.W.2d 914, 916 (Tenn.1998).

To the extent that the doctrine of vicarious liability can be considered a species of joint and several liability,[6] we have held

---

**6.** 3 Fowler V. Harper et al., *Harper, James and Gray on Torts* § 10. 1, at 3–4 (3d ed.2007); W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 52, at 346 (5th ed. 1984)

that the adoption of comparative fault in *McIntyre v. Balentine* did not undermine the continuing viability of various vicarious liability doctrines, including the family purpose doctrine, *Camper v. Minor,* 915 S.W.2d 437, 447–48 (Tenn.1996), "respondeat superior, or similar circumstance where liability is vicarious due to an agency-type relationship between the active, or actual wrongdoer and the one who is vicariously responsible." *Browder v. Morris,* 975 S.W.2d 308, 311–12 (Tenn.1998). Finally, we determined that tortfeasors who have a duty to protect others from the foreseeable intentional acts of third persons are jointly and severally liable with the third person for the injuries caused by the third person's intentional acts. *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 87 (Tenn.2001); *White v. Lawrence,* 975 S.W.2d 525, 531 (Tenn.1998); *Turner v. Jordan,* 957 S.W.2d 815, 823 (Tenn.1997).

Ever since we handed down our decision in *McIntyre v. Balentine,* this Court's goal has been to assure that Tennessee's comparative fault regime strikes the proper balance between the plaintiff's interest in being made whole with the defendant's interest in paying only those damages for which the defendant is responsible. *Brown v. Wal–Mart Discount Cities,* 12 S.W.3d 785, 787 (Tenn.2000). We have found this balance in proceedings that link liability to fault. *Biscan v. Brown,* 160 S.W.3d 462, 474 (Tenn.2005); *Ali v. Fisher,* 145 S.W.3d at 563–64; *Carroll v. Whitney,* 29 S.W.3d at 16–17, 21. Thus, we have embraced an approach in which a tortfeasor may seek to reduce its propor-tional share of the damages by successfully asserting as an affirmative defense that a portion of the fault for the plaintiff's damages should be allocated to another tortfeasor.

Throughout this period, we have repeatedly emphasized four core principles of the comparative fault regime that we ushered in when we decided *McIntyre v. Balentine.* These principles are: (1) that when "the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, all tortfeasors must be joined in the same action, unless joinder is specifically prohibited by law"; [7] (2) that when "the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributed to its fault"; [8] (3) that the goal of linking liability with fault is not furthered by a rule that allows a defendant's liability to be determined by the happenstance of the financial wherewithall of the other defendants; [9] and (4) that the purpose of the comparative fault regime is to prevent fortuitously imposing a degree of liability that is out of all proportion to fault.[10]

### III.

This Court has not addressed the continuing viability of the original tortfeasor rule since deciding *McIntyre v. Balentine* in 1992. Despite the Court of Appeals's belief to the contrary, we do not view *McIntyre v. Balentine* as being incompati-

---

("*Prosser and Keeton*"); *see also* Restatement (Third) of Torts: Apportionment of Liability § 13 cmt. c, reporter's note c (2000).

7. *Samuelson v. McMurtry,* 962 S.W.2d 473, 476 (Tenn.1998); *see also Ridings v. Parsons Co.,* 914 S.W.2d 79, 83–84 (Tenn.1996).

8. *Sherer v. Linginfelter,* 29 S.W.3d at 455; *Samuelson v. McMurtry,* 962 S.W.2d at 476; *Owens v. Truckstops of Am.,* 915 S.W.2d at 430.

9. *Volz v. Ledes,* 895 S.W.2d at 680.

10. *McIntyre v. Balentine,* 833 S.W.2d at 58.

ble with the common-law rule permitting a tortfeasor to be found liable for subsequent negligent conduct of third parties that is a foreseeable result of the original tortfeasor's negligence. Even though our decision in *McIntyre v. Balentine* altered the common-law rules for determining the apportionment of the liability among multiple tortfeasors, it did not alter the common-law rules for determining when tortfeasors are liable for the harm they cause.

### A.

*McIntyre v. Balentine* did not require this Court to determine the role that the original tortfeasor rule would play following the advent of comparative fault. During the intervening years, the Court of Appeals has decided on three occasions that the original tortfeasor rule—embracing both the liability of the original tortfeasor for subsequent negligent acts and the concept of joint and several liability—was not affected by our decision in *McIntyre v. Balentine*.

In the first case presented to the Court of Appeals, the court observed that "to allow a tortfeasor to reduce his damages by alleging the subsequent negligence of a medical provider would for all practical purposes abolish the common law rule." *Atkinson v. Hemphill*, No. 01A01–9311–CV–00509, 1994 WL 456349 at \*2 (Tenn. Ct.App. Aug.24, 1994) (No Tenn. R.App. P. 11 application filed). Believing that the abolition of the common-law original tortfeasor rule would "penalize injured parties in several inequitable ways," the court concluded, "[w]e do not believe that the Su-

preme Court intended this result." *Atkinson v. Hemphill*, 1994 WL 456349, at \*2.

The Court of Appeals followed the *Atkinson v. Hemphill* decision four years later. *Troy v. Herndon*, No. 03A01–9707–CV–00271, 1998 WL 820698, at \*1–2 (Tenn. Ct.App. Nov.24, 1998) (No Tenn. R.App. P. 11 application filed). When the issue was next presented in 2003, the Court of Appeals again followed *Atkinson v. Hemphill*, but for the first time, the defendant requested this Court to review the decision. While we did not review the case, we designated the Court of Appeals' decision "Not for Citation." *Jackson v. Hamilton*, No. W2000–01992–COA–R3–CV, 2003 WL 22718386, at \*5–6 (Tenn.Ct.App. Nov.4, 2003), *perm. app. denied, designated not for citation* (Tenn. May 10, 2004). This designation signified that the opinion could not be considered persuasive authority. Tenn. Sup.Ct. R. 4(G)(1).[11]

We have concluded that the Court of Appeals analyses in the three cases it considered failed to differentiate between the two principles embodied in the original tortfeasor rule—the original tortfeasor's liability for subsequent negligent acts of third parties and the original tortfeasor's joint and several liability with the subsequent negligent actors. Accordingly, we now take this occasion to disapprove the holdings in *Atkinson v. Hemphill*, *Troy v. Herndon*, and *Jackson v. Hamilton* with regard to the original tortfeasor rule.

### B.

The principles governing liability for successive injuries are settled. They rec-

**11.** Our decision to designate the *Jackson v. Hamilton* opinion "Not for Citation" did not go unnoticed by the Court of Appeals. In 2004, the court declined to address the continuing viability of the original tortfeasor doctrine and decided a case on different grounds after noting that "we must conclude that the Supreme Court has serious questions about the survival of the common law rule iterated in *Transports, Inc. v. Perry." Estate of Jenkins*, No. M2003–01561–COA–R3–CV, 2004 WL 2607531, at \*5 (Tenn.Ct.App. Nov.16, 2004) (No Tenn. R.App. P. 11 application filed).

ognize that there are circumstances in which an earlier tortfeasor may be held liable not only for the injury caused by its own negligent conduct but also for later injury caused by the negligent conduct of another tortfeasor. Restatement (Second) of Torts § 433A, cmt. c (1965); *Prosser and Keeton* § 52, at 352. Liability in these circumstances arises when the subsequent negligent conduct is a foreseeable or natural consequence of the original tortfeasor's negligence. 2 Jacob A. Stein, *Stein on Personal Injury Damages* § 11:7 (3d ed.2009) (hereinafter "Stein"); *see also McClenahan v. Cooley,* 806 S.W.2d 767, 775 (Tenn.1991) (noting that "[a]n intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrongdoer of liability, provided the intervening act could have reasonably been foreseen and the conduct was a substantial factor in bringing about the harm").

Negligence in subsequent medical treatment of a tortiously caused injury is the most common invocation of this rule. Lee & Lindahl, at § 6:3; *Prosser and Keeton* § 52, at 352; 2 Stein, at § 11:7. The first two Restatements of Torts recognized this principle. Restatement (Second) of Torts § 457, at 496; Restatement of Torts § 457, at 1214 (1934). It has also been carried forward in the Proposed Final Draft of the Restatement (Third) of Torts: Liability for Personal Injury in the following form:

> An actor whose tortious conduct is a factual cause of physical harm to another is subject to liability for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, so long as the harm arises from a risk that inheres in the effort to render aid.

Restatement (Third) of Torts: Liability for Physical Harm § 35, at 693 (Proposed Final Draft No. 12005) ("Restatement (Third) of Torts: Liability for Physical Harm").

Tennessee's courts have recognized and applied this principle for over one hundred years. This Court first alluded to it in *Arkansas River Packet Co. v. Hobbs,* 105 Tenn. 29, 44–46, 58 S.W. 278, 282 (1900). In 1931, we invoked it as an alternate basis for preventing an injured employee from filing a medical malpractice suit against an employer-provided physician after the employee obtained a judgment against the employer. *Revell v. McCaughan,* 162 Tenn. 532, 538, 39 S.W.2d 269, 271 (1931). In 1967, characterizing the principle as a "well settled principle of law," we employed it for the first time to decide a dispute that did not arise out of a workplace injury. *Transports, Inc. v. Perry,* 220 Tenn. at 64–65, 414 S.W.2d at 4–5. Ten years later in another case involving a workplace injury, we noted that this now well settled principle "applies to the general field of tort law." *McAlister v. Methodist Hosp.,* 550 S.W.2d 240, 242 (Tenn.1977).

### C.

*McIntyre v. Balentine* involved a straightforward intersection crash involving two intoxicated drivers. It did not raise an issue of liability for successive injuries, and thus, this Court had no occasion to determine how the new comparative fault regime would mesh with the principle that, in proper circumstances, an earlier tortfeasor could be liable for the later negligent acts of another tortfeasor. To understand the effect of *McIntyre v. Balentine* on the original tortfeasor rule, the two principles in that rule—the original tortfeasor's liability for subsequent negligent acts of third parties and the original tortfeasor's joint and several liability with the subsequent negligent actors—

must be unraveled and considered separately.

■ Today, we state unequivocally that our decision regarding joint and several liability in *McIntyre v. Balentine* did not alter Tennessee's common-law rules with regard to liability of tortfeasors for injuries caused by subsequent medical treatment for the injuries they cause. That rule is a rule that determines "when defendants are liable for the harm they caused." Restatement (Third) of Torts: Liability for Physical Injury § 35, cmt. d, at 696–97. Thus, the rule in Tennessee is now, as it was before *McIntyre v. Balentine* was decided, that an actor whose tortious conduct causes physical harm to another is liable for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, as long as the enhanced harm arises from a risk that inheres in the effort to render aid. *See* Restatement (Third) of Torts: Liability for Physical Injury § 35, at 693.

■ However, at the same time, we again reaffirm our earlier decisions holding that following *McIntyre v. Balentine*, the doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury. *Sherer v. Linginfelter*, 29 S.W.3d at 455; *Samuelson v. McMurtry*, 962 S.W.2d at 476; *Owens v. Truckstops of Am., Inc.*, 915 S.W.2d at 430. This decision is not inconsistent with our decision to retain the rule imposing liability on tortfeasors for subsequent negligent medical care for the injuries caused by the original tortfeasor. As the drafters of the proposed Restatement (Third) of

Torts: Liability for Physical Injury have explained:

Nor does modification of joint and several liability require or imply any change in the rule contained in ... Section [35]. Modern adoption of pure several liability limits the liability of each defendant liable for the same harm to that defendant's comparative share of the harm. See Restatement Third, Torts: Apportionment of Liability § 11.[12] Several liability, however, does not provide rules about when defendants are liable for harm that they caused. When two or more defendants are liable for the enhanced harm suffered by a plaintiff, as may occur under this Section, and the governing law imposes several liability, each of the defendants is held liable for the amount of damages reflecting the enhanced harm discounted by the comparative share responsibility assigned by the factfinder to that defendant.

Restatement (Third) of Torts: Liability for Physical Harm § 35, cmt. d., at 697.

The Court of Appeals in *Atkinson v. Hemphill* overstated the effect of *McIntyre v. Balentine* when it observed that applying the decision in circumstances such as this one would "penalize injured parties in several inequitable ways." *Atkinson v. Hemphill*, 1994 WL 456349, at *3. To the contrary, as observed by the American Law Institute, "[c]omparative responsibility provides a different and easier method for apportioning liability among severally liable parties." Restatement (Third) of Torts: Apportionment of Liability § 11, at cmt. b., at 109. It spares injured plaintiffs, as well as the courts and other parties, the time and expense of

---

**12.** Restatement (Third) of Torts: Apportionment of Liability § 11 (2000) provides: "When, under applicable law, a person is severally liable to an injured person for an indivisible injury, the injured person may recover only the severally liable person's comparative-responsibility share of the injured person's damages."

multiple trials. As we noted over ten years ago, Tennessee's comparative fault regime "retains the efficiency of joint liability and the fairness of comparative fault." *Samuelson v. McMurtry*, 962 S.W.2d at 476.

Most of the states that have adopted the principles of comparative fault or comparative responsibility have done so by statute rather than by judicial decision. The substance of these statutes differs because states have balanced the rights and interests of the parties in different ways. Accordingly, decisions from other state courts construing their own comparative fault statute provide only limited guidance to us. However, we note that a significant number of state courts that have addressed the same question we address in this case have, like this Court, concluded that comparative fault does not prevent the continuing imposition of liability on an original tortfeasor for subsequent negligent medical care for the injuries caused by the original tortfeasor. *See, e.g., Henry v. Superior Court*, 160 Cal.App.4th 440, 72 Cal.Rptr.3d 808, 820 (2008); *Ass'n for Retarded Citizens–Volusia, Inc. v. Fletcher*, 741 So.2d 520, 524–25 (Fla.Dist.Ct.App. 1999); *Cramer v. Slater*, 146 Idaho 868, 204 P.3d 508, 514 (2009); *Edwards v. Sisler*, 691 N.E.2d 1252, 1254–55 (Ind.Ct.App. 1998); *Payne v. Hall*, 139 N.M. 659, 137 P.3d 599, 610 (2006).

### D.

■ Finally, Ms. Banks and the Tennessee Association for Justice assert that public policy dictates retaining joint and several liability in circumstances where an injured person suffers enhanced physical harm due to the efforts of third persons to render aid to the injured person for injuries caused by the defendant's negligence. They assert that joint and severable liability is appropriate because (1) the original defendant is the proximate cause of the entire injury and (2) doing away with joint and several liability will require injured persons to make difficult choices with regard to filing suit against their treating physicians.

The proximate cause argument overlooks the fact that in cases of this sort, the original tortfeasor's conduct is not the sole proximate cause of the plaintiff's indivisible injury. To the contrary, the independent tortious conduct of the original tortfeasor and one or more other parties are both proximate causes of the injury. The tortfeasors are not acting in concert, have not breached common duty, and do not have a relationship triggering the application of vicarious liability. *Cf. Resolution Trust Corp. v. Block*, 924 S.W.2d at 354–55, 357; *Gen. Elec. Co. v. Process Control Co.*, 969 S.W.2d at 916; *Camper v. Minor*, 915 S.W.2d at 447–48. Therefore, this circumstance is governed by our consistent holding that joint and several liability is no longer applicable in circumstances "where the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury." *Sherer v. Linginfelter*, 29 S.W.3d at 455; *Owens v. Truckstops of Am.*, 915 S.W.2d at 430; *see also Samuelson v. McMurtry*, 962 S.W.2d at 475–76. As we noted more than one century ago, where "there is no intent that the combined acts of all shall culminate in the injury resulting therefrom, ... it is just that each should only be held liable so far as his acts contribute to the injury." *Swain v. Tenn. Copper Co.*, 111 Tenn. 430, 439, 78 S.W. 93, 94 (1903).

Ms. Banks and the Tennessee Association for Justice also insist that not applying joint and several liability in circumstances like the one involved in this case will place plaintiffs in the difficult position of being forced to sue their treating physicians and, thereby, adding the complexity

of a medical negligence claim to an otherwise straightforward ordinary negligence case. The force of this argument is somewhat undermined by the fact that Ms. Banks is not being drawn into reluctantly suing her treating physician because she has already sued Dr. Boyce. In any event, we have concluded that these concerns are overstated.

When a defendant tortfeasor files an answer asserting the affirmative defense [13] that a nonparty healthcare provider is at fault for the plaintiff's injuries, the plaintiff has two options. First, it can decide not to name the healthcare provider as a defendant under Tenn.Code Ann. § 20–1–119(a)(2009) and run the risk of a diminished recovery if the defendant succeeds in convincing the trier of fact that the nonparty healthcare provider is partially or completely at fault. Second, the plaintiff can amend its complaint in accordance with Tenn.Code Ann. § 20–1–119(a) and thereby preserve its opportunity for an undiminished recovery.

When a plaintiff elects to amend its complaint to name as a defendant a healthcare provider whom the original defendant identified as liable for the plaintiff's injury, the burden of proof regarding the healthcare provider's negligence does not shift entirely to the plaintiff. It remains with the original defendant who asserted the affirmative defense of comparative fault. Thus, the plaintiff is not required to shoul-

der the difficulty and expense of proving medical negligence unless, for some reason, it chooses to do so, just as Ms. Banks has already done in this case. That burden remains with the defendant who asserted the affirmative defense of comparative fault in the first place.[14]

Leaving the burden of proof with the defendant asserting the comparative fault defense does not prejudice plaintiffs who elect to amend their complaint to name a healthcare provider as a defendant after the original defendant has asserted that the healthcare provider is comparatively at fault. If the original defendant is unable to prove that the healthcare provider is liable, the plaintiff may still obtain a complete recovery from the original defendant, just as it originally set out to do. If, however, the original defendant is successful in proving that the healthcare provider is liable, then the plaintiff may obtain a complete recovery apportioned between the original defendant and the healthcare provider based on their fault.

Plaintiffs are not required to amend their complaints to add as defendants third parties whom a defendant identifies as a contributing tortfeasor. That decision remains entirely in their control. Amending a complaint to add as a defendant a third-party tortfeasor identified by the original defendant also does not force the plaintiff to try a case it was not prepared to try.[15]

---

**13.** One of the affirmative defenses included in Tenn. R. Civ. P. 8.03 is "comparative fault (including the identity or description of the other alleged tortfeasors)."

**14.** Accordingly, if a plaintiff amends its complaint to add a new defendant identified by the original defendant as contributing to the plaintiff's indivisible injuries, trial courts would not act on the new defendant's motion for a directed verdict until the close of all the proof in order to permit the original defendant to present its evidence regarding the new defendant's fault. A directed verdict at

the close of the plaintiff's proof would be appropriate only when the original defendant states that it lacks sufficient evidence to send the issue of the new defendant's fault to the jury. If the new defendant's motion for directed verdict is granted, the jury cannot be requested to allocate any portion of the fault to the now-dismissed defendant.

**15.** Tenn.Code Ann. § 29–26–122(b) (Supp. 2009) requires defendants who assert a comparative fault affirmative defense against a physician or other healthcare provider that will require the introduction of expert testi-

Therefore, amending a complaint pursuant to Tenn.Code Ann. § 20–1–119(a) to name as a defendant a third party named by a defendant as a contributing tortfeasor is neither burdensome nor costly.

## IV.

In addition to their argument that they should have been permitted to assert a comparative fault defense against Cumberland Manor, the Elks Lodge defendants assert that the original tortfeasor principle is inconsistent with this Court's opinion in *Mercer v. Vanderbilt University, Inc.*, 134 S.W.3d 121 (Tenn.2004). They argue that *Mercer v. Vanderbilt University, Inc.* stands for the proposition that a "negligent actor should not be held responsible for the subsequent negligence of a healthcare provider under Tennessee's law of comparative fault." The Elks Lodge defendants have placed more weight on the Mercer opinion than it can bear.

The principles that dictated the result in *Mercer v. Vanderbilt University, Inc.* do not apply to cases like this one for two reasons. First, unlike *Mercer* where we declined to extend comparative fault to patients who sue their physicians for negligence because doing so would prevent any recovery for injured patients who were found to be more than fifty percent at fault, applying comparative fault in this case will not prevent an injured plaintiff from recovering. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d at 129–30. It will simply enable the trier of fact to apportion the fault between the defendants whose conduct caused or contributed to the plaintiff's injuries.

Second, holding that original tortfeasors will not be liable for the enhanced injuries caused from the efforts of physicians or other healthcare providers to render aid to an injured plaintiff would be contrary to the basic tenets of Tennessee tort law, more than one century of Tennessee common-law precedents, and the general principles of liability reflected in the Restatement of Torts. Negligence is conduct that violates a person's obligation to exercise reasonable care to avoid engaging in behavior that creates an unreasonable danger to others. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 363 (Tenn. 2008). Persons who are negligent are liable for the natural and probable consequences of their conduct, *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 181 (Tenn. 1992), as long as their conduct was a substantial factor in bringing about the plaintiff's injury, the injury was reasonably foreseeable, and there is no statute or policy relieving them of liability. *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn.2006).

Ever since the advent of comparative fault in 1992, we have emphasized that the doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury. *Sherer v. Linginfelter*, 29 S.W.3d at 455; *Samuelson v. McMurtry*, 962 S.W.2d at 476; *Owens v. Truckstops of Am., Inc.*, 915 S.W.2d at 430. Today, we have explicitly held that the doctrine of joint and several liability does not apply in cases where the injuries caused by the negligence of the original tortfeasor are enhanced by the subsequent negligence of physicians and other health-

---

mony in accordance with Tenn.Code Ann. § 29–26–115 (Supp.2009) to file a certificate of good faith within thirty days after filing their answer. There is no similar statutory obligation imposed on plaintiffs who amend

their complaint pursuant to Tenn.Code Ann. § 20–1–119 after the original defendant has asserted a comparative fault defense involving a nonparty physician or other healthcare provider.

care providers. Nothing in *Mercer v. Vanderbilt University, Inc.* dictates a contrary result. Accordingly, we decline the Elks Lodge defendants' invitation to extend our ruling in *Mercer v. Vanderbilt University, Inc.* to entirely eliminate the original tortfeasor rule.

## V.

■ Dr. Boyce has raised four other issues, only one of which merits discussion.[16] He argues that the original tortfeasor principle cannot be applied to him because he "cannot be simultaneously branded the original tortfeasor and a successive tortfeasor." We respectfully disagree. Dr. Boyce can, in fact, be both an original tortfeasor and a successive tortfeasor.

In cases involving successive acts of malpractice, many courts have recognized that the original treating physician may be liable for the injuries caused by the negligence of subsequent physicians for medical treatment undertaken to mitigate the harm caused by the original physician's malpractice. Lee & Lindahl, at § 6:3; *see also, e.g., Daly v. United States*, 946 F.2d 1467, 1471–72 (9th Cir. 1991); *Carter v. Shirley*, 21 Mass.App.Ct. 503, 488 N.E.2d 16, 20 (1986); *Lindquist v. Dengel*, 92 Wash.2d 257, 595 P.2d 934, 937 (1979); *Rine ex rel. Rine v. Irisari*, 187 W.Va. 550, 420 S.E.2d 541, 545 (1992).

The specific circumstance in which a physician qualifies both as an "original tortfeasor" and a "successive tortfeasor"

was well addressed in *State ex rel. Blond v. Stubbs*, 485 S.W.2d 152 (Mo.Ct.App. 1972). The plaintiff was injured as a result of a dangerous condition at a building operated by the Tenth and Main Corporation and was treated by three different physicians. He alleged that each of the physicians had treated him negligently and that their treatment enhanced the injuries for which the Tenth and Main Corporation and the earlier treating physicians were responsible. Applying the original tortfeasor rule, the Missouri Court of Appeals concluded:

> By reason of the operation of the foregoing rule, defendant Tenth and Main Corporation is liable not only for its own alleged negligence, but also for the alleged negligence of all [three] doctors; likewise, [the first in time physician] is liable, not only for his own alleged negligence, but also for that of the two succeeding doctors; likewise, [the second in time physician] is liable for his own alleged negligence and also that of [the third in time physician]. The net result of all this is that the alleged negligence of [the third in time physician] is a common occurrence for which all four defendants have potential liability.

*State ex rel. Blond v. Stubbs*, 485 S.W.2d at 154.

The continuing liability under the original tortfeasor rule is not tied to anything magical about being the "original" tortfeasor. It stems instead from being a proximate cause of an aggravated injury result-

---

**16.** Dr. Boyce's issue regarding the sufficiency of Ms. Banks's pleadings is beyond the scope of the issue certified on the interlocutory appeal. *Tenn. Dep't. of Mental Health and Mental Retardation v. Hughes*, 531 S.W.2d 299, 300 (Tenn.1975) (noting that "[w]hen dealing with an interlocutory appeal, the Court can and will deal only with those matters clearly embraced within the question certified to it"). He has waived the issue regarding his entitle-

ment to attorney's fees by failing to brief and argue the issue. Tenn. R.App. P. 27(a)(7); *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400–01 (Tenn.Ct.App.2006). Finally, his issue regarding the statutory allocation of fault in medical malpractice cases is pretermitted in light of our holding that he should be permitted to assert a comparative fault affirmative defense based on Cumberland Manor's care of Ms. Banks.

ing from subsequent medical treatment of the negligent injury that one has caused or aggravated. *See Transports, Inc. v. Perry,* 220 Tenn. at 64–65, 414 S.W.2d at 4; Restatement (Third) of Torts: Liability for Physical Harm § 35, at 693. We agree with the approach employed by the Missouri Court of Appeals in *State ex rel. Blond v. Stubbs.* Accordingly, we find that Dr. Boyce can, in fact, simultaneously be an original tortfeasor, for purposes of the aggravation that he allegedly caused and a subsequent aggravation resulting from the alleged medical negligence of Cumberland Manor, and a successive tortfeasor, for purposes of the injury allegedly negligently caused by the Elks Lodge and allegedly negligently aggravated by Dr. Boyce.

## VI.

We reiterate that the doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury. We hold that an actor whose tortious conduct causes physical harm to another is liable for any enhanced harm the other suffers due to the efforts of third persons to render aid reasonably required by the other's injury, as long as the enhanced harm arises from a risk that inheres in the effort to render aid. In light of our consistent holding that the doctrine of joint and several liability no longer applies to circumstances in which separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, it is improper to maintain joint and several liability in cases involving subsequent medical negligence where there is even less cause. We find that the trial court erred by refusing to permit the Elks Lodge defendants and Dr. Boyce to amend their answers to assert a comparative fault defense against Cumber-

land Manor. We remand the case to the trial court for further proceedings consistent with this opinion, and we tax the costs in three equal shares to Alice J. Banks, the Elks Lodge defendants, and Robert H. Boyce and Premier Orthopaedics & Sports Medicine, P.C. for which execution, if necessary, may issue.